**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, <br><br> *Plaintiff*, <br><br> vs. <br><br> ZOTEC PARTNERS, LLC, <br><br> *Defendant.* | Case No.   5:25-cv-00186-RWS |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT AND TO <u>PARTIALLY STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Oral argument requested pursuant to L.R. CV-7(g)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.     This Suit Is Not A Collateral Attack On IDR Determinations. ........................................... 2

     A.     FAA vacatur and agency reopening are irrelevant to this case. ............................. 2

     B.     HCSC's requested relief will not nullify any award. ............................................ 5

     C.     Eligibility is not part of the IDR payment determination. .................................... 6

     D.     There is no "collateral attack" bar here. ............................................................. 8

II.     HCSC Is Not Collaterally Estopped From Pursuing Its Claims. ...................................... 10

III.     HCSC has standing. ....................................................................................................... 12

IV.     Rule 19 does not require dismissal. ................................................................................ 14

V.     HCSC's complaint satisfies Rules 8 and 9(b). ............................................................... 15

VI.     This Case Does Not Implicate Any Petitioning Immunities. ........................................... 17

     A.     The *Noerr-Pennington* doctrine does not apply. ................................................. 17

     B.     Texas' litigation privilege does not apply. ......................................................... 18

VII.     Zotec fails to identify any defect in HCSC's claims. ..................................................... 19

     A.     HCSC has pled a claim for fraud. ....................................................................... 19

     B.     HCSC has pled a claim for negligent misrepresentation. .................................... 21

     C.     HCSC has pled a claim for fraudulent inducement. ............................................ 22

     D.     HCSC has pled a claim for money had and received. .......................................... 23

     E.     HCSC validly requests both declaratory and injunctive relief. ............................ 24

VIII.     Personal jurisdiction and venue lie against Zotec in this District. ................................... 24

     A.     The Court has personal jurisdiction over Zotec. ................................................. 24

     B.     Venue is proper in this district. .......................................................................... 25

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Radiology Partners, Inc.*,
No. 3:24-cv-1343, 2026 U.S. Dist. LEXIS 84866 (M.D. Fla. Apr. 16, 2026)........................1, 3

*AJ Holdings of Metairie, LLC v. BJ's Jewelry & Loan, LLC*,
No. 21-cv-374, 2022 WL 278924 (E.D. La. Jan. 31, 2022) ......................................................14

*Allen v. McCurry*,
449 U.S. 90 (1980).....................................................................................................................9

*Anderson v. Durant*,
550 S.W.3d 605 (Tex. 2018).....................................................................................................22

*Anthem Blue Cross Life & Health Ins. Co. v. HaloMD, LLC*,
No. 8:25-CV-01467, 2026 WL 982629 (C.D. Cal. Apr. 9, 2026) ...................................1, 3, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).....................................................................................................................8

*Bigham v. Envirocare of Utah, Inc.*,
123 F. Supp. 2d 1046 (S.D. Tex. 2000) ....................................................................................25

*In re Burlington N., Inc.*,
822 F.2d 518 (5th Cir. 1987) ...............................................................................................17, 18

*Casper v. West*,
No. 4:23-cv-42, 2025 WL 539945 (E.D. Tex. Feb. 18, 2025)..................................................10

*Consultants in Pain Med., PLLC v. Ellen Boyle Duncan, PLLC*,
690 S.W.3d 739 (Tex. Ct. App. 2024)......................................................................................18

*Dassinger v. S. Cent. Bell Tel. Co.*,
505 F.2d 672 (5th Cir. 1974) (per curiam)................................................................................10

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
205 F.3d 906 (6th Cir. 2000) ......................................................................................................8

*Deuell v. Tex. Right to Life Comm., Inc.*,
508 S.W.3d 679 (Tex. Ct. App. 2016)......................................................................................19

*Drs. Hosp. of Laredo v. Cigarroa*,
No. SA-21-CV-01068, 2024 WL 3432554 (W.D. Tex. July 16, 2024)....................................18

*Dunbar Med. Sys., Inc. v. Gammex Inc.*,
216 F.3d 441 (5th Cir. 2000) ...................................................................................22

*Ed & F Man Biofuels Ltd. v. MV FASE*,
728 F. Supp. 2d 862 (S.D. Tex. 2010) .....................................................................21

*El Paso Disposal, LP v. Ecube Labs Co.*,
766 F. Supp. 3d 692 (W.D. Tex. 2025).....................................................................16

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
623 F. Supp. 2d 798 (S.D. Tex. 2009) ......................................................................21

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*,
51 S.W.3d 573 (Tex. 2001).......................................................................................20

*Est. of Parker v. Miss. Dep't of Pub. Safety*,
140 F.4th 226 (5th Cir. 2025) .............................................................................12, 13

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................................................................................................7

*Foley v. Parlier*,
68 S.W.3d 870 (Tex. Ct. App. 2002) ........................................................................21

*United States ex rel. Gomez v. Koman Constr., LLC*,
796 F. Supp. 3d 353 (W.D. Tex. 2025).....................................................................16

*Greer v. White Oak State Bank*,
673 S.W.2d 326 (Tex. Ct. App. 1984) ......................................................................23

*Grimes v. BNSF Ry. Co.*,
746 F.3d 184 (5th Cir. 2014) ....................................................................................12

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
140 F.4th 271 (5th Cir. 2025) .................................................................................6, 8

*Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*,
512 F.3d 742 (5th Cir. 2008) ......................................................................................9

*Hawkins v. Upjohn Co.*,
890 F. Supp. 609 (E.D. Tex. 1994)............................................................................20

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019) ....................................................................................13

*IP Invs., LLC v. Velsicol Chem., LLC*,
No. CIV.A. H-13-629, 2014 WL 991819 (S.D. Tex. Mar. 13, 2014) ......................22

*Jacuzzi v. Pimienta*,
762 F.3d 419 (5th Cir. 2014) (per curiam)......................................................................8

*James v. Brown*,
637 S.W.2d 914 (Tex. 1982).............................................................................................19

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015)...........................................................................................................4

*Martin v. MBank El Paso, N.A.*,
947 F.2d 1278 (5th Cir. 1991) .........................................................................................20

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)............................................................................................................4

*MGA Insurance Co. v. Charles R. Chesnutt, P.C.*,
358 S.W.3d 808 (Tex. Ct. App. 2012) .............................................................................23

*Mid-Texas Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*,
615 F.2d 1372 (5th Cir. 1980) .........................................................................................17

*Mod. Orthopaedics of NJ v. Premera Blue Cross*,
No. 2:25-CV-01087, 2025 WL 3063648 (D.N.J. Nov. 3, 2025) .......................................8

*In re Morrison*,
No. 05-45926, 2009 WL 1856064 (Bankr. S.D. Tex. June 26, 2009) ..............................17

*Mott's LLP v. Comercializadora Eloro, S.A.*,
507 F. Supp. 3d 780 (W.D. Tex. 2020)..............................................................................5

*In re Mounce*,
390 B.R. 233 (Bankr. W.D. Tex. 2008)............................................................................20

*Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of
Health & Hum. Servs.*,
145 F.4th 212 (2d Cir. 2025) ...........................................................................................17

*Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*,
No. 3:12-cv-4641, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014)..................................24

*Ortiz v. Collins*,
203 S.W.3d 414 (Tex. Ct. App. 2006)..............................................................................21

*PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*,
80 F.4th 555 (5th Cir. 2023) ...........................................................................................15

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)............................................................................................................3

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
    390 U.S. 102 (1968)....................................................................................................15

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ...................................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999).....................................................................................................4

*Richard Agag, MD v. Cigna Health & Life Ins. Co.*,
    No. 3:25-CV-00498, 2026 WL 1021213 (D. Conn. Apr. 15, 2026)....................................3, 5

*Rumage v. Bergman*,
    No. 07-CA-135, 2008 WL 11417135 (W.D. Tex. Jan. 16, 2008) .................................4

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) .......................................................................................5

*Sec. & Exch. Comm'n v. Musk*,
    No. 25-cv-105, 2026 WL 279790 (D.D.C. Feb. 3, 2026)............................................6

*Shell Oil Co. v. Writt*,
    464 S.W.3d 650 (Tex. 2015).......................................................................................19

*Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*,
    136 F.4th 718 (7th Cir. 2025) ....................................................................................20

*Simpson v. Osteostrong Franchising, LLC*,
    No. 4:19-CV-2334, 2025 WL 2723281 (S.D. Tex. Aug. 8, 2025), *rep. and rec.
    adopted*, No. 4:19-CV-02334, 2025 WL 2721821 (S.D. Tex. Sept. 23, 2025) .......................19

*Smith v. US Health Res. & Servs. Admin.*,
    No. 23-cv-1425, 2025 WL 3124848 (W.D. La. Sept. 30, 2025) .................................15

*Staats v. Miller*,
    243 S.W.2d 686 (Tex. 1951).......................................................................................23

*Tejas Motel, L.L.C. v. City of Mesquite by & through Bd. of Adjustment*,
    63 F.4th 323 (5th Cir. 2023) ......................................................................................10

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*,
    966 F. Supp. 2d 690 (W.D. Tex. 2013).......................................................................19

*United States v. Lauderdale Cnty., Miss.*,
    914 F.3d 960 (5th Cir. 2019) ........................................................................................7

*UnitedHealthcare of Pennsylvania v. NorthStar Anesthesia of Pennsylvania*,
    No. 25-cv-7197, 2026 WL 1145885 (E.D. Pa. April 28, 2026)..............................3, 4

*Universal Am. Barge Corp. v. J-Chem, Inc.*,
  946 F.2d 1131 (5th Cir. 1991) ...............................................................................10

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021)................................................................................................13

*Valls v. Johanson & Fairless, L.L.P.*,
  314 S.W.3d 624 (Tex. Ct. App. 2010) ...................................................................21

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) ...............................................................................17

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................................24

*Wolf v. Cowgirl Tuff Co.*,
  No. 1:15-CV-1195, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016) .......................18

**Statutes**

42 U.S.C.
  § 300gg-111(c)(5) ....................................................................................................7
  § 300gg-111(c)(5)(A).............................................................................................2, 6
  § 300gg-111(c)(5)(E) .............................................................................................2, 6
  § 3000gg-111 *et seq.* .......................................................................... *passim*

**Rules**

Fed. R. Civ. P.
  8..............................................................................................................................15
  9(b)......................................................................................................................15, 16
  12....................................................................................................................... *passim*
  12(b)(6) ..........................................................................................................5, 16, 20
  19.......................................................................................................................14, 15
  19(b).......................................................................................................................15
  19(b)(2)(B)..............................................................................................................15

**Other Authorities**

Administrative Action Precluding Judicial Decision, 18B Fed. Prac. & Proc. Juris.
  § 4475 (3d ed.) .......................................................................................................10

45 C.F.R. § 149.510(c)(1)(v) ........................................................................6, 7, 10, 11

Sarah Kliff and Margot Sanger-Katz, *A $440,000 Breast Reduction: How Doctors
  Cashed In on a Consumer Protection Law*, New York Times (Apr. 22, 2026),
  https://tinyurl.com/ms4j3tp5 ..................................................................................11

U.S. Const. art. III ................................................................................................................13

U.S. Const. art. III, § 2, cl. 1 ...........................................................................................12, 13

U.S. Dep't of Health & Hum. Servs., *Federal Independent Dispute Resolution*
    *(IDR) Technical Assistance for Certified IDR Entities and Disputing Parties:*
    *Errors Identified After Dispute Closure* (June 2025),
    https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf
    ("2025 Reopening Guidance") ......................................................................................2, 3

5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ...................................5

5B Wright & Miller, Federal Practice and Procedure § 1358 (4th ed. 2004) ...............................20

**INTRODUCTION**

Zotec's arguments for dismissal rely on sleight of hand. Zotec is not a medical provider. Nor is it a patient or an insurer. It is a third-party vendor that has engaged in a widespread and ongoing fraud scheme that relies on blatant and verifiable misrepresentations to take advantage of the Independent Dispute Resolution ("IDR") process set out in the No Surprises Act ("NSA"). The NSA does not mention or contemplate the existence of an entity like Zotec, much less immunize it from tort liability. Zotec simply has no rights or protections under the NSA. Whatever "bargain" Zotec believes Congress struck with the law, it does not include Zotec.

Zotec nonetheless opines at length about how the NSA cabins judicial review of IDR awards between insurers and providers, relying on cases addressing vacatur under the NSA. *See Anthem Blue Cross Life & Health Ins. Co. v. HaloMD, LLC*, No. 8:25-CV-01467, 2026 WL 982629, at *9 (C.D. Cal. Apr. 9, 2026) (holding "Plaintiffs' allegations do not meet the substantive requirements for claiming vacatur"); *Aetna Health Inc. v. Radiology Partners, Inc.*, No. 3:24-cv-1343, 2026 U.S. Dist. LEXIS 84866, at *9-10 (M.D. Fla. Apr. 16, 2026) (same). But those provisions of the NSA have no bearing here. HCSC does not seek to vacate any IDR award through this action. Nor could it given that (1) Zotec is not (and could not be) a party to any such award; and (2) HCSC seeks relief solely from Zotec based on Zotec's own misconduct. The only result if HCSC prevails will be that Zotec is held liable for defrauding HCSC. Zotec's grandiose claims about the policy implications of this case are smoke and mirrors.

Zotec's arguments to the contrary presuppose that, even though Zotec committed the torts at issue in this case, HCSC is required to seek the money it lost to Zotec's scheme from third parties—Zotec's provider clients, some of whom may not have even realized that Zotec was systematically submitting ineligible claims to the IDR process. Nowhere in Zotec's lengthy pair of briefs is that assumption explained or supported. That is because it is baseless. It has no

grounds in the statutory language of the NSA, which by its plain terms governs only specific types of disputes between insurers and providers concerning IDR awards. Nor would heeding Zotec's request to graft this atextual immunity onto the statute serve the NSA's policy goals, as the NSA certainly was not intended to allow third parties to improperly exploit and disrupt the IDR process by deluging it with huge numbers of ineligible items and services for IDR.

Zotec's argument is not subtle—it claims that, even though the NSA makes no mention of vendors like Zotec, Congress impliedly granted Zotec complete immunity from tort liability in connection with the IDR process. It posits that, no matter how illegal its conduct, Congress has determined that providers must bear the consequences of Zotec's actions. That is as wrong as it sounds. The fact that Zotec profits by exploiting and interfering with the IDR process does not grant Zotec immunity under the NSA. The Court should deny Zotec's motion in its entirety.

## ARGUMENT

### I.    This Suit Is Not A Collateral Attack On IDR Determinations.

#### A.    FAA vacatur and agency reopening are irrelevant to this case.

Zotec's arguments concerning vacatur and agency reopening depend on strategic omissions. Zotec contends that "Congress designed the NSA to give efficient finality to payment disputes." D.E. 50 at 3. But *what* payment disputes, and between *whom*?

The statute supplies the answers: the NSA sets forth a method to challenge a "[p]ayment determination" as between an insurer and a provider. 42 U.S.C. § 300gg-111(c)(5)(A). Where an insurer or provider disputes the IDRE's payment determination, there are certain circumstances under which they may seek vacatur of the decision. *Id.* § 300gg-111(c)(5)(E). Alternatively, an insurer or provider can seek to correct certain unilateral errors by IDR entities through an optional administrative process. *See* U.S. Dep't of Health & Hum. Servs., *Federal Independent Dispute Resolution (IDR) Technical Assistance for Certified IDR Entities and Disputing Parties:*

-2-

*Errors Identified After Dispute Closure* (June 2025), https://www.cms.gov/files/document/idr-ta-errors-after-dispute-closure.pdf ("2025 Reopening Guidance").[1] The NSA is silent, however, as to what remedies are available for other types of claims that relate to the IDR process but go beyond any individual award or claims against those who were not parties to an IDR award.

Here, HCSC seeks to recoup losses caused by Zotec—a third-party vendor that has built its business on defrauding the IDR process. While Zotec handles IDR submissions for its provider clients, those clients (not Zotec) are the formal "parties" to the IDR proceedings, so there are no IDR awards in **Zotec's** name for HCSC to vacate or reopen. Nor would vacatur remedy the harms alleged here, which extend to settlements made outside of the NSA and include overhead fees and costs incurred by HCSC in having to respond to the scheme as a whole. *See* D.E. 50 at 3-5. Congress' decision to limit review of one specific type of dispute between two specific parties indicates that Congress did not intend to limit judicial review of other types of disputes, nor to limit review of disputes between different parties. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014). And the cases Zotec cites do not support its position—they each concern disputes between insurers and providers and analyze remedies unavailable against Zotec. *See Anthem*, 2026 WL 982629, at *9; *Aetna Health*, 2026 U.S. Dist. LEXIS 84866, at *9-10; *Richard Agag, MD v. Cigna Health & Life Ins. Co.*, No. 3:25-CV-00498, 2026 WL 1021213, at *12 (D. Conn. Apr. 15, 2026).[2]

Indeed, Zotec recently filed a notice of supplemental authority regarding another such case while wildly mischaracterizing its holding. *See* D.E. 51. In *UnitedHealthcare of*

---

[1] Zotec neglects to mention that the guidance does not permit reopening based on "a clerical, jurisdictional, or procedural error made by a disputing party," *i.e.*, based on false information submitted during the IDR proceedings, but rather focuses on unilateral mistakes by "the certified IDR entity." 2025 Reopening Guidance at 7. It further focuses on errors "not identified until after a dispute is closed," as opposed to instances in which a certified IDR entity chooses to ignore evidence that it lacks jurisdiction over a claim. *Id.* at 1.

[2] *Agag* expressly breaks with Fifth Circuit precedent interpreting the NSA. *Agag*, 2026 WL 1021213, at *12.

*Pennsylvania v. NorthStar Anesthesia of Pennsylvania*, the district court cited cases holding that the NSA does not preempt traditional state tort suits, but determined the court lacked diversity jurisdiction given that there was indisputably less than $75,000 at issue, and so "dismiss[ed] without prejudice to allow UnitedHealthcare to pursue its common law fraud claim against NorthStar in state court." No. 25-cv-7187, 2026 WL 1145885, at *5 (E.D. Pa. Apr. 28, 2026). The *NorthStar* court's acknowledgment that a fraud claim could be pursued based on intentional submission of ineligible IDR disputes supports HCSC's position.

"Courts must begin with the presumption that Congress did not intend to preempt state law causes of action . . . ." *Rumage v. Bergman*, No. 07-CA-135, 2008 WL 11417135, at *1 (W.D. Tex. Jan. 16, 2008) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The NSA's "discrete" bar on judicial review of specific disputes between specific parties must be interpreted "narrow[ly]," not stretched to confer additional, unenumerated immunities. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83, 487 (1999). Where a party claims Congress has completely insulated its actions from judicial review, that party "bears a 'heavy burden.'" *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015). Zotec does not carry this burden, instead simply insisting the NSA confers broad immunities not found in its text. That does not suffice.

In short, HCSC is not trying to "route around th[e] structure" of the NSA or "expand[] judicial review beyond the statute's limits." D.E. 50 at 4. There is no mechanism under the NSA for HCSC to pursue its claims against Zotec. Nor are there any restrictions in the NSA on the claims HCSC has pled against Zotec. And a judgment against Zotec will not "reopen[ ] or correct[ ]" IDR awards Zotec procured through fraud. *Id.* at 3. Again, Zotec was not a party to those awards, and HCSC is not challenging the merits of the IDRE's payment determinations. The only result of a judgment for HCSC would be that Zotec would be required to make good

-4-

the losses caused by its fraud, just like any other tortfeasor.

### B.    HCSC's requested relief will not nullify any award.

Zotec next seeks dismissal based on "the relief HCSC seeks." D.E. 50 at 5. But a "dispute over Plaintiff's request for relief is not a proper basis for dismissal under a Rule 12(b)(6) motion," because "[w]hether a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief asked for can be granted, but whether the plaintiff is entitled to *any* relief." *Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020) (emphasis in original); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court."). Even if Zotec were correct that *some* of the relief HCSC seeks would raise concerns under the NSA, dismissal would not be appropriate here given that Zotec does not and cannot claim that *all* relief HCSC seeks presents such concerns.[3]

In any event, Zotec is simply wrong. HCSC seeks to recover from Zotec based on Zotec's own misconduct. HCSC does not bring a claim for vacatur of the IDR awards Zotec procured by fraud because HCSC *cannot* bring such a claim against Zotec, even as this case concerns solely Zotec's unlawful conduct. It is thus unclear how a judgment against Zotec will have the effect of "strip[ping]" IDR awards held by third parties "of their binding force." D.E. 50 at 5.

And while Zotec catastrophizes about how difficult it would be to enforce an injunction, it is unclear why; injunctions "order[ing]" parties "to obey" specific laws and to "refrain[] from specified conduct" are commonplace. *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854

---

[3] For example, HCSC alleges that it has incurred significant expense ferreting out Zotec's systematic fraud, and much of that expense is not tied to any specific claim. FAC ¶ 13. In some cases, HCSC won the IDR proceeding but was still forced to pay administrative expenses due to Zotec's fraud. *Id.* Similarly, injunctive relief against Zotec prohibiting certain of its practices plainly raises no such concerns.

F.3d 765, 785 (5th Cir. 2017). Moreover, the cases Zotec cites raise concerns about injunctions requiring supervision of medical providers who *must* submit claims to the IDR process if they believe they are underpaid, not third-party vendors who *choose* to exploit that process for profit. In any event, the specific terms of any injunction are not before the Court, and courts "decline to address whether a complaint has adequately pleaded facts supporting entitlement to a demanded form of relief" in this manner, reserving that question for decision on a developed record. *Sec. & Exch. Comm'n v. Musk*, No. 25-cv-105, 2026 WL 279790, at *21 (D.D.C. Feb. 3, 2026).

### C.   Eligibility is not part of the IDR payment determination.

Zotec contends that "HCSC's whole theory depends on a clean split that the statute and regulations do not recognize." D.E. 50 at 6. On the contrary, Zotec's entire defense rests on an absolute immunity for vendors not found in the NSA or its implementing regulations, and which Zotec makes no effort to explain. As discussed above, Zotec does not and cannot show that the NSA immunizes Zotec from tort liability. That is sufficient grounds to resolve the issue.

In any event, to whatever extent the NSA's restrictions are relevant, they do not apply to eligibility determinations. The provision of the NSA limiting judicial review specifically applies only to "[a] determination of a certified IDR entity under subparagraph (A)." 42 U.S.C. § 300gg-111(c)(5)(E). And the only "determination" referenced in that subparagraph is "the amount of payment." *Id*. § 300gg-111(c)(5)(A). As Zotec helpfully points out in its reply, *see* D.E. 50 at 6-7, determinations of eligibility under the NSA are addressed elsewhere. *See, e.g.*, 45 C.F.R. § 149.510(c)(1)(v). The Fifth Circuit has explained in interpreting the NSA that, where Congress cross references one part of a statutory scheme and not another, this is presumed to be deliberate. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 276-77 (5th Cir. 2025). Eligibility determinations may be the "front door" to the IDR process, D.E. 50 at 6, but Congress sensibly wrote the statute to guard the finality of only the payment determinations to which the

law opens that door in the first place.

Zotec further attempts to downplay the fact that the limitation of judicial review appears in a section of the statute instructively titled "Payment Determination." 42 U.S.C. § 300gg-111(c)(5). But the Fifth Circuit holds that section headings are "evidence when interpreting the operative text of the statute." *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 965 (5th Cir. 2019). That evidence here points firmly in the direction of HCSC's position. And while Zotec claims that the text following this heading "forecloses" HCSC's interpretation, D.E. 50 at 7, the opposite is true. The use of the term "qualified IDR item or service" within this section makes plain that the NSA limits judicial review only of "qualified" payment determinations through vacatur. Nothing in the statute forecloses judicial review of eligibility issues.

Finally, rejecting Zotec's argument accords with the principle that independent judicial review is available where a party disputes an arbitration panel's jurisdiction. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). While there are some important distinctions between the IDR process and true arbitration, the threshold issue of jurisdiction is a common denominator. Zotec contends this jurisdictional principle does not apply because "[t]he statute and regulations assign" the "question" of eligibility "to the IDRE as part of resolving each IDR dispute." D.E. 50 at 7. But the NSA is silent on this, and the cited regulation merely directs the IDRE to "review the information submitted in the ***notice of IDR initiation*** by Zotec "to determine whether the Federal IDR process applies." 45 C.F.R. § 149.510(c)(1)(v) (emphasis added). In other words, the regulations do not assign the IDRE an adjudicatory role as to eligibility, but instead only require the IDRE to look at the information submitted by the provider (here, Zotec) to see if it describes an eligible item or service.

Zotec conspicuously *omits* this in its brief via a strategically placed ellipses that leave out what, specifically, the IDRE must review to make an eligibility determination. *See* D.E. 50 at 6. The situation in which arbitrators get to decide their own jurisdiction is an exception to the "general rule" that "the issue of arbitrability is for the courts to decide," which applies "unless the parties stipulate otherwise." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 647 (1986). There is no such agreement here, nor is there any indication in the statute that Congress intended to override the default rule.

### D.    There is no "collateral attack" bar here.

The above principle further dooms Zotec's collateral bar argument. "An arbitrator's award will be binding on the parties" and not subject to collateral attack "*unless they challenge the validity of the underlying contract to arbitrate*" and thus the arbitrator's jurisdiction. *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000) (emphasis added). This is because "*any* judgment may be collaterally attacked if it is void for lack of jurisdiction." *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) (per curiam). To hold that the collateral attack bar applies here, the Court would first have to determine that the IDREs had jurisdiction. HCSC's allegations that they lacked jurisdiction control at the Rule 12 stage.

In any event, because "differences pervade the IDR and arbitration processes," the IDR process "is not an arbitration." *Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 2:25-CV-01087, 2025 WL 3063648, at *5–7 (D.N.J. Nov. 3, 2025). Zotec claims—without citation—that this does not matter because cases applying the collateral attack bar to arbitration awards do so out of a judge-made policy favoring "finality." D.E. 50 at 7-8. Not so. Those cases instead rely on the overall statutory structure of the FAA. *See Decker*, 205 F.3d at 909. As the Fifth Circuit has explained, in enacting the NSA, Congress did not import the FAA's larger statutory scheme, but rather one discrete provision of it as applied to one discrete type of dispute. *Guardian Flight*,

140 F.4th at 276. Zotec cites no authority that supports dramatically expanding the collateral attack bar to an IDR process that lacks the element of consent and procedural safeguards that justify the bar in the arbitration context. As discussed below, courts do not afford preclusive effect where "the party against whom an earlier . . . decision is asserted did not have a full and fair opportunity to litigate the claim or issue." *Allen v. McCurry*, 449 U.S. 90, 101 (1980).

Nor, for that matter, does Zotec convincingly explain how its independent wrongdoing, which cannot be remedied by vacatur, falls within the collateral attack bar. The question is whether "at least some of the resulting claims [are] based on harm independent of ***the arbitration award***." *Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 751 n.5 (5th Cir. 2008) (emphasis added). Here, HCSC's complaint makes clear that is the case. Zotec systematically submits ineligible claims to IDR proceedings. This costs HCSC money ***whether HCSC wins or loses***—*i.e.*, HCSC suffers harm caused by Zotec even when the IDRE issues an award in HCSC's favor. HCSC's damages include, *inter alia*, substantial overhead expended in responding to Zotec's fraud, and being duped into settlement agreements outside of the IDR process. *See, e.g.*, FAC ¶¶ 13, 206, 211. To use Zotec's framing, these are "injur[ies]" that "exist apart from the adjudicative result." D.E. 50 at 8. And they support denying Zotec's motion.

Finally, Zotec cannot claim that there is some collateral attack bar to an injunction forbidding Zotec from systematically submitting ineligible claims to the IDR process in the future. Zotec cautions this would require the Court to police Zotec's conduct, and this is a "process Congress assigned elsewhere." *Id.* at 9. But the NSA does not mention Zotec or its ilk. It would hardly be contrary to the NSA to enjoin a stranger to the statutory scheme from interfering with that scheme. And as discussed above, the regulations do not require IDREs to "police eligibility," *id.*, but rather just to determine whether the information ***Zotec*** submits—true

or false—indicates a service or item is qualified. 45 C.F.R. § 149.510(c)(1)(v). As HCSC alleges, IDREs do not serve any meaningful gatekeeping function with respect to eligibility.

**II.    HCSC Is Not Collaterally Estopped From Pursuing Its Claims.**

"[T]he Fifth Circuit has held that generally a res judicata [(or collateral estoppel)] contention cannot be brought in a motion to dismiss." *Casper v. West*, No. 4:23-cv-42, 2025 WL 539945, at *19 n.11 (E.D. Tex. Feb. 18, 2025) (citation omitted). The instant case is not the rare exception to that rule. The record supporting Zotec's affirmative defense is simply not before the Court. And Zotec is wrong that, taking the allegations of HCSC's complaint as true, the Court may find estoppel. If nothing else, "[a] judgment lacks res judicata effect if it was rendered without jurisdiction." *Tejas Motel, L.L.C. v. City of Mesquite by & through Bd. of Adjustment*, 63 F.4th 323, 333 (5th Cir. 2023); *see also Dassinger v. S. Cent. Bell Tel. Co.*, 505 F.2d 672, 674 (5th Cir. 1974) (per curiam) (explaining where a tribunal has "no jurisdiction over the action . . . it ha[s] no power to render a judgment on the merits against either party"). HCSC alleges Zotec systematically supplies false information to IDREs to cause them to issue awards in IDR proceedings in the absence of jurisdiction. Those allegations control at the Rule 12 stage.

HCSC's allegations that it was not given a fair opportunity to raise the jurisdictional issue in the IDR proceedings further forecloses Zotec's defense. Due process dictates that "collateral estoppel cannot be applied against a party as to issues not fully and fairly litigated." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991). "An administrative decision commands preclusive effects only if it resulted from a procedure that seems an adequate substitute for judicial procedure." Administrative Action Precluding Judicial Decision, 18B Fed. Prac. & Proc. Juris. § 4475 (3d ed.).

Zotec does not dispute HCSC's arguments that the IDR process lacks important due process protections such as discovery, motion practice, briefing, evidentiary submissions, live

testimony, cross examination, or even the opportunity to view and rebut the opposing party's submissions. D.E. 44 at 17. Beyond that, HCSC alleges Zotec has strategically swamped HCSC with ineligible claims such that HCSC has been unable to object to eligibility in some cases, and even where HCSC has objected, the IDREs frequently ignored those objections. *See* FAC ¶¶ 69-79. That is because the regulations do not require IDREs to consider any objection HCSC raises, *see* 45 C.F.R. § 149.510(c)(1)(v), and IDREs have a ***direct financial interest*** in ignoring them: if the IDREs decline jurisdiction, they do not get paid. FAC ¶ 33(f) n.11.[4] IDREs are not required nor incentivized to police their own jurisdiction. The result is that HCSC has been deprived of a chance to raise its jurisdictional objections that satisfies due process.

Moreover, Zotec's response to HCSC's allegation that HCSC's jurisdictional objections are systematically ignored by IDREs is based on nonbinding "Departmental guidance" and generalized "Departmental reports." D.E. 50 at 10-11. It is not based on the actual regulations in the NSA.  Beyond that, what Zotec asserts makes no sense. Where, for example, HCSC objects that a claim indisputably relates to an ineligible plan type, and that the provider has already initiated state IDR proceedings, *see, e.g.*, FAC ¶ 127, there are literally no other facts that Zotec can cite, or arguments it can make, that would render the claim eligible. Yet in this very situation, IDREs have inexplicably proceeded to initiate the IDR process. *Id*. The IDREs could not do so without relying on Zotec's misrepresentations. This confirms that the scheme at issue was not "actually litigated" before the IDREs. Not only was it impossible for HCSC to address Zotec's larger scheme in the IDR forum—there is no indication the IDRE even considered both sides of the jurisdictional issue. And in any event, HCSC's allegations control at the Rule 12 stage.

---

[4] Indeed, a recent news article detailed how acting as an IDRE has become extremely lucrative—in just the first two years of the NSA, the small handful of IDREs raked in ***$885 million*** in administrative fees. Sarah Kliff and Margot Sanger-Katz, *A $440,000 Breast Reduction: How Doctors Cashed In on a Consumer Protection Law*, New York Times (Apr. 22, 2026), https://tinyurl.com/ms4j3tp5.

Finding no support in the law for its argument, Zotec concludes by resorting to policy. It claims that amorphous "finality interests" it divines from the statute dictate the application of collateral estoppel. D.E. 50 at 11. This is not a serious argument. The "federal interests" described in the cases upon which Zotec relies generally relate to protecting the integrity of judicial proceedings, and they counsel against applying collateral estoppel here—for example, due to "procedural differences [that] 'might be likely to cause a different result'" and thus make "collateral estoppel . . . inappropriate," as well as the absence of "arbitrators" who are "'disinterested individuals.'" *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014).

## III.    HCSC has standing.

Zotec presses theories of standing that strain credulity. With respect to Article III traceability, the law requires only "a causal connection between the injury and the conduct complained of." *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 236 (5th Cir. 2025). First, Zotec ignores the fact that HCSC seeks to recover for harms separate and apart from the payment determinations improperly awarded. D.E. 44 at 14. There can be no traceability issue as to those harms. Beyond that, HCSC alleges that Zotec submits false attestations to IDREs to induce them to institute IDR proceedings in the absence of jurisdiction. As to that portion of HCSC's damages, cause and effect are plain: Zotec makes a misrepresentation, the IDRE acts on that misrepresentation, and this injures HCSC.

Zotec nonetheless argues that HCSC "does not allege a straight line from Zotec's alleged conduct to HCSC's alleged injury." D.E. 50 at 12. But without Zotec's false attestations, the IDREs would not initiate IDR proceedings in the absence of jurisdiction, and HCSC would not be injured. This establishes causation, and Zotec cannot argue otherwise. Regardless, the law does not require HCSC to plead "a straight line." *Id*. "Even an uncertain or indirect causal connection may suffice at the pleading stage." *Parker*, 140 F.4th at 237.

-12-

Zotec's only rejoinder is that, sure, it lied to IDREs intending to cause the very harm that resulted to HCSC, and yes, those IDREs acted on Zotec's lie, but really the fault rests with the IDREs for being duped. D.E. 50 at 12-13. There is nothing complex about HCSC's allegations: the only reasonable explanation for what has occurred is that the IDREs are relying entirely on Zotec's lies in initiating IDRs. Regardless, Zotec's preposterous defense is foreclosed by authority that holds Article III traceability is satisfied if the defendant was merely "one of multiple contributing causes" or "'only one of several persons who caused the harm.'" *Parker*, 140 F.4th at 236-37. HCSC's injuries would not have occurred absent Zotec's lies. While the IDREs instituting IDR proceedings without jurisdiction may be "the most immediate cause" of HCSC's injury, the lies Zotec told to induce the IDREs to do so were plainly "an additional, indirect cause" of that injury. *Id.* at 237. This is amply sufficient to "clear[ ] th[e] low causation bar at the standing stage." *Id*. Zotec does not and cannot cite a single case holding otherwise.

Zotec's redressability argument is even more inscrutable. It rests on the remarkable claim that a "transfer [of] money after the fact" to make HCSC whole for its losses "is not redressability" for purposes of Article III standing. D.E. 50 at 13-14. That is how tort law works. If that is not sufficient, it is unclear what could ever satisfy the redressability standard. Indeed, the Supreme Court has explained that even ***nominal*** damages satisfy the redressability requirement because they are "damages paid to the plaintiff[ ] [that] 'affect[ ] the behavior of the defendant towards the plaintiff' and thus independently provide redress" to the extent required by Article III. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). An award of damages to compensate HCSC for what it lost to Zotec's scheme would plainly "lessen" HCSC's injury. *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019).

Zotec's arguments concerning injunctive relief are similarly confounding. Zotec claims an order enjoining it from continuing its scheme would not redress HCSC's injuries because "HCSC would still be pulled into IDR, still incur the same process costs, and still face eligibility and payment determinations." D.E. 50 at 14. To be clear, HCSC's injury is not the simple fact that it is required to participate in the IDR process. HCSC's injury is that it has lost millions of dollars addressing a wave of invalid IDR proceedings initiated by Zotec. An injunction against Zotec's continued *fraud* would plainly redress that injury. And it is unclear what "independent actors" would have "unfettered choices" to perpetuate that injury. D.E. 50 at 14. If Zotec does not submit false attestations of eligibility to IDREs, those IDREs will have no occasion to consider additional IDR proceedings without jurisdiction.

## IV.    Rule 19 does not require dismissal.

HCSC seeks damages against Zotec, and Zotec alone, for harm that Zotec caused through its own fraud. HCSC further seeks an injunction against Zotec, and Zotec alone, prohibiting it from continuing to defraud the IDR process. Awarding this relief plainly would not impair the interests of any third party within the meaning of Rule 19. *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986); *AJ Holdings of Metairie, LLC v. BJ's Jewelry & Loan, LLC*, No. 21-cv-374, 2022 WL 278924, at *3 (E.D. La. Jan. 31, 2022).

Zotec instead focuses its Rule 19 argument on HCSC's request for declaratory and injunctive relief related to enforcement of IDR awards. D.E. 50 at 15-16. In other words, Zotec concedes its argument, at most, pertains to only one part of one of HCSC's claims, leaving the rest of this suit untouched. But while Zotec catastrophizes that this relief would "strip clinicians of payment rights" and nullify the awards of third parties not before the Court, *id.*, it is unclear how. HCSC does not and cannot seek vacatur of these awards in this lawsuit. And while HCSC's claims relate to the payment awards held by the third parties, the claims it brings and the relief it

-14-

seeks against Zotec are "separate and distinct" from any legal rights held by those third parties. *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 562 (5th Cir. 2023); *see also id.* (while the plaintiff's claims required the court to assess "the validity of [a third party's] title" to a tract of land, that third party was not required to be joined under Rule 19).

In any event, "[b]efore dismissing a case for failure to join a required party under Rule 19, a district court 'must' consider the Rule 19(b) factors." *Id.* at 563. Zotec does not address those factors in the two sentences it uses to address 19(b). D.E. 50 at 15-16. Moreover, Rule 19(b) explicitly contemplates that there is no need for dismissal where any potential "prejudice could be lessened or avoided by . . . shaping the relief" ultimately awarded to the plaintiff. Fed. R. Civ. P. 19(b)(2)(B); *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 112 (1968) (explaining that Rule 19(b) mandates "a court should consider modification of a judgment as an alternative to dismissal"). Given that Zotec appears to concede that most of the relief HCSC seeks here does not implicate Rule 19, to the extent the Court has concerns, it may address them at the remedies stage. And it is hard to see where those concerns may arise. HCSC seeks injunctive relief solely against Zotec. And "'a declaratory judgment binds the parties, but only the parties.'" *Smith v. US Health Res. & Servs. Admin.*, No. 23-cv-1425, 2025 WL 3124848, at *5 (W.D. La. Sept. 30, 2025) (citation omitted).

## V.      HCSC's complaint satisfies Rules 8 and 9(b).

HCSC's complaint explains at length precisely what Zotec did and provides numerous specific examples, with claim numbers, dates, amounts, and direct quotations or screenshots of the false attestations provided to IDREs, along with other details. *See* D.E. 44 at 21-24. Zotec does not cite any case dismissing a similarly detailed pleading under Rule 8 or 9(b).[5]

---

[5] It is unclear what more Zotec believes is required. But to the extent the Court does determine additional detail is necessary, HCSC respectfully requests leave to file an amended complaint addressing any such concerns.

Zotec first asserts that HCSC does not plausibly allege more than that Zotec submitted its own "competing views" of claims to the IDRE. D.E. 50 at 16. But what competing views? Zotec systematically lies about simple, binary facts about which there can be no honest dispute. *See* FAC ¶ 8. In just a few years, it has done so "many thousands" of times. *Id.* ¶ 133. Zotec makes no effort to explain how, for example, it honestly believed it could submit the same claim to two separate IDR proceedings and obtain double payment for the same service, much less how it could do so ***200 times*** over a short period. *See id.* ¶¶ 8(c), 120-32. Zotec asks the Court to assume it had some innocent reason it does not explain. But it is a reasonable inference to be drawn in HCSC's under Rule 12(b)(6) that this was what it seems: intentional deception.

Zotec next complains that HCSC's "'representative examples' theory" is insufficient to satisfy Rule 9(b). D.E. 50 at 16. This is not HCSC's "theory"—it is settled law. Where the plaintiff alleges a large and complex scheme, they "may satisfy Rule 9(b) by pleading a representative example in sufficient detail." *United States ex rel. Gomez v. Koman Constr., LLC*, 796 F. Supp. 3d 353, 371 (W.D. Tex. 2025). It is unclear how Zotec reads the authority HCSC cites to require the plaintiff to plead "the full universe of transactions at issue," D.E. 50 at 16, when the exact opposite is true. *El Paso Disposal*, for instance, explains the plaintiff had not pled the full universe of transactions at issue and was "not required to do so," and that to demand this level of detail in a complex case involving thousands of claims is "absurd." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 708 (W.D. Tex. 2025). The vague dicta Zotec pulls from the footnote of an out-of-circuit case that expressly "does not rely on Rule 9(b)" does not change this settled law. *HaloMD*, 2026 WL 982629, at *9 n.5.

## VI.    This Case Does Not Implicate Any Petitioning Immunities.

### A.    The *Noerr-Pennington* doctrine does not apply.

Zotec's reply does not and cannot cite a single case applying the *Noerr-Pennington* doctrine in the IDR context or to any similar quasi-arbitral proceeding. That is because *Noerr-Pennington* applies solely where a party "petition[s] the government for governmental action." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). The focus is on **who** is being asked to do **what**. *See In re Burlington N., Inc.*, 822 F.2d 518, 527 (5th Cir. 1987) ("[T]he key to extending Noerr-Pennington protection is whether the . . . defendant genuinely was attempting to influence governmental decisionmaking.").

Zotec attempts to circumvent this by arguing that, while IDR proceedings do not involve any governmental decisionmaker, they involve a "government-created forum." D.E. 50 at 17. That is insufficient. *Noerr-Pennington* is triggered only by "situations involving **direct actions** made to influence governmental decisionmaking," and does not apply where, as here, a petition "was not directed toward any governmental agency or official." *Mid-Texas Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*, 615 F.2d 1372, 1382-83 (5th Cir. 1980) (emphasis added). Where the challenged conduct is in the first instance "essentially private," and is merely potentially subject to a "governmental process" at some point in the future, there is no immunity. *Id*. at 1383.

Here, Congress chose to create a statutory scheme under which disputes are initially submitted to a private third-party decisionmaker paid for by the parties. *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 219 (2d Cir. 2025). An IDRE does not make policy. It does not issue judicial opinions. It does not wield governmental power more than any other private arbitrator. And the submission of a dispute to "private arbitration . . . is the antithesis of the very public rights that *Noerr-Pennington* seeks to protect." *In re Morrison*, No. 05-45926, 2009 WL 1856064, at *6 (Bankr. S.D. Tex. June

-17-

26, 2009). It does not and cannot directly result in governmental action.

Moreover, "[t]he law is clear that *Noerr-Pennington* 'does not protect deliberately false or misleading statements.'" *Drs. Hosp. of Laredo v. Cigarroa*, No. SA-21-CV-01068, 2024 WL 3432554, at *5 (W.D. Tex. July 16, 2024) (citation omitted). Zotec claims that HCSC must show "that the challenged petitioning is 'objectively baseless'" to overcome *Noerr-Pennington* immunity on this basis. D.E. 50 at 17-18. But "courts have recognized a different formulation of the 'sham' litigation exception" that instead asks whether a party deliberately procured a result through false representations. *Drs. Hosp. of Laredo*, 2024 WL 3432554, at *5. Such was plainly the case here. *See* FAC ¶ 8. And in any event, the IDR proceedings at issue *were* objectively baseless. Zotec does not and cannot claim that it had reasonable grounds to ask IDREs to issue awards in the absence of jurisdiction. Indeed, the Fifth Circuit has indicated that *Noerr-Pennington* immunity does not even attach where the tribunal lacked jurisdiction to hear a dispute. *In re Burlington*, 822 F.2d at 530. Zotec does not supply any objectively reasonable explanation for its actions. And even if Zotec could, it would be for the Court to evaluate at a later stage of these proceedings, not on a Rule 12 motion. *See Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195, 2016 WL 4597638, at *9 n.7 (W.D. Tex. Sept. 2, 2016).

### B.     Texas' litigation privilege does not apply.

Zotec similarly cannot cite a single case applying Texas' litigation privilege under like circumstances. Nor does Zotec dispute that IDR proceedings fail to satisfy most of the criteria Texas courts have used in applying Texas' litigation privilege. Its only rejoinder is that the test used to expand the privilege is not "a checklist." D.E. 50 at 18. Zotec thus merely insists, without citation, that Texas courts would recognize the privilege even in the absence of the hallmarks that have defined prior contexts in which Texas courts have done so. *See, e.g.*, *Consultants in Pain Med., PLLC v. Ellen Boyle Duncan, PLLC*, 690 S.W.3d 739, 763 (Tex. Ct. App. 2024) (privilege

-18-

did not apply where a government agency had "discretion to initiate and pursue investigations and to ascertain facts" but did "not assert a power to examine witnesses, to compel the attendance of witnesses, or to hear the litigation of issues on a hearing").

As HCSC has pointed out, Texas courts are cautious in applying the privilege in new contexts. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015). Zotec nonetheless asks the Court to apply it to a new type of proceeding where the relevant factors admittedly are not met. D.E. 50 at 18. It asks the Court to apply the privilege to new types of claims well beyond the bounds of where Texas courts have applied it previously. *See Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 690 (Tex. Ct. App. 2016) (explaining "the judicial privilege does not apply to every type of claim," and Texas courts have only applied it where "the plaintiff seeks reputational damages"); *see also Simpson v. Osteostrong Franchising, LLC*, No. 4:19-CV-2334, 2025 WL 2723281, at *10 (S.D. Tex. Aug. 8, 2025), *rep. and rec. adopted*, No. 4:19-CV-02334, 2025 WL 2721821 (S.D. Tex. Sept. 23, 2025) (same and listing cases). It asks the Court to expand the privilege beyond the "judge, jurors, counsel, parties or witnesses" who typically enjoy the privilege to a third-party vendor. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). And it asks the Court to resolve this affirmative defense in its favor at the Rule 12 stage. *See U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 707 (W.D. Tex. 2013). Zotec provides no good reason for the Court to extend the privilege so dramatically.

## VII.    Zotec fails to identify any defect in HCSC's claims.

### A.    HCSC has pled a claim for fraud.

Zotec attacks HCSC's fraud claim contending HCSC has not pled reliance, causation, or damages. None of Zotec's arguments bear scrutiny.

***Reliance.*** As HCSC explained before, at times it did not catch Zotec's misrepresentations because Zotec strategically deluges HCSC with batched claims to achieve this very result. *See*

D.E. 44 at 28; *see also* FAC ¶¶ 72-74, 145-53. In these instances, HCSC straightforwardly relied on Zotec's false attestations. Zotec's only rejoinder is that HCSC could have caught these falsehoods if it had tried harder to ferret out Zotec's lies, and thus Zotec's fraud was "knowable." D.E. 50 at 20. Even if that were so, it is irrelevant. "Texas case law does not require a plaintiff to show the reasonableness of its reliance on a misrepresentation to prove fraud . . . ." *Martin v. MBank El Paso, N.A.*, 947 F.2d 1278, 1280 (5th Cir. 1991). Instead, the reliance need only be actual and justifiable. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001). The only case Zotec cites to the contrary concerns fraud-based vacatur under the FAA, which is not applicable here. D.E. 50 at 20. While Zotec spends much of its reply discussing other theories of reliance, the foregoing is sufficient to resolve the issue for purposes of the instant motion: "[A] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims." *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (emphasis omitted); *see also* 5B Wright & Miller, Fed. Prac. & Proc. § 1358 (4th ed.) ("a Rule 12(b)(6) motion may not be used to dismiss only part of a claim").

In any event, should the Court choose to reach the instances where HCSC objected, only for its objection to be ignored, HCSC pleads forced reliance. "It is not ***always*** the case . . . that a plaintiff claiming fraud or negligent misrepresentation under Texas law will have to prove ***actual and direct*** reliance upon the defendant's false representations," such as where the lie is presented to a third party the defendant knows will essentially force the plaintiff to act. *In re Mounce*, 390 B.R. 233, 247–48, 255 n.27 (Bankr. W.D. Tex. 2008) (emphasis in original); *see also Hawkins v. Upjohn Co.*, 890 F. Supp. 609, 612 (E.D. Tex. 1994) (discussing cases in which false representations to regulators supported a fraud claim by a third party forced to rely on regulatory approval). Zotec has no response to these cases, instead only asserting that the Court should

-20-

ignore this authority, but without explaining why. D.E. 50 at 22.

**Causation.** Zotec repeats its traceability argument dressed up as an argument about causation. *Id.* at 21-22. But it is beyond reasonable dispute that Zotec's lies were "a substantial factor in bringing about [HCSC's] injury." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 812 (S.D. Tex. 2009) (citation omitted). Again, had Zotec not lied to the IDREs about jurisdictional facts, the IDREs would not have issued IDR awards in the absence of jurisdiction. It is unclear what Zotec believes is speculative. *See also supra* § III.

**Damages.** Zotec concludes by asserting HCSC "does not tie any specific loss to any specific actionable misrepresentation." D.E. 50 at 21. That assertion is baffling. HCSC not only pleads that it "suffered injury," which is all that is required, *Foley v. Parlier*, 68 S.W.3d 870, 878 (Tex. Ct. App. 2002), HCSC goes beyond this and pleads specific examples of amounts it lost due to specific misrepresentations. FAC ¶¶ 90–91, 103–05, 116–18, 131.

## B.    HCSC has pled a claim for negligent misrepresentation.

To the extent Zotec simply repeats its arguments from the previous section, *see* D.E. 50 at 21-22, they fare no better the second time around and fail for the same reason. Nor, for that matter, does Zotec's single additional argument on negligent misrepresentation move the needle.

Zotec claims that HCSC is attempting to "narrow the adversarial-setting principle." *Id*. at 22. HCSC cannot narrow a principle that Zotec invented. As Zotec concedes, the cases it cites all pertain specifically to statements made by ***opposing counsel***. *See, e.g.*, *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 635 (Tex. Ct. App. 2010); *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. Ct. App. 2006). Outside of this situation, Texas courts have refused to adopt Zotec's free floating "adversarial-setting principle," and have held that "something more than a commercial and/or adversarial context is required before negation of justifiable reliance on an alleged misrepresentation," including where the parties are adverse in litigation. *Ed & F Man*

*Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 882 (S.D. Tex. 2010). There is no basis extending that principle to a third-party vendor's attestations about simple, binary facts submitted to initiate an IDR proceeding. FAC ¶¶ 37–48, 165–67. Such submissions are intended to be relied upon— by IDREs and by counterparties forced to participate in the process. *Id*. ¶¶ 167, 193.

Zotec is ultimately forced to acknowledge that Texas law requires some "additional factors" to defeat reasonable reliance. D.E. 50 at 22. It simply asserts, without analysis, that those factors are present here. But as explained in the authority HCSC cites, the "additional factor tends to be '[1] an express contract whose contrary terms were ignored by the person claiming justifiable reliance or [2] an attorney making the misrepresentations, or [3] some kind of appearance of finality in an agreement.'" *IP Invs., LLC v. Velsicol Chem., LLC*, No. CIV.A. H-13-629, 2014 WL 991819, at *6 (S.D. Tex. Mar. 13, 2014) (citation omitted). Zotec does not and cannot claim that any of the "additional factors" recognized by Texas courts are presented here.

## C.    HCSC has pled a claim for fraudulent inducement.

On fraudulent inducement, Zotec's reply adds little to its opening brief. To state a claim for fraudulent inducement HCSC need only plead "the existence of a contract," *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018), which it plainly does. *See* FAC ¶ 206 (Zotec "further induced HCSC to unnecessarily ***come to settlement agreements*** with Zotec on certain ineligible claims submitted into the IDR Process.") (emphasis added); *see also Dunbar Med. Sys., Inc. v. Gammex Inc.*, 216 F.3d 441, 452 (5th Cir. 2000) (settlement agreements are contracts under Texas law). Zotec's attempt to reframe the FAC as challenging only "participation in a statutory dispute resolution process, not contract formation" blatantly mischaracterizes the pleading. D.E. 50 at 23. And while Zotec raises for the first time in its reply that HCSC does not specify all of the settlement agreements at issue, *id*. at 23, it does not cite a single case for the proposition that this is required. As explained above, HCSC alleges in detail Zotec's fraud with specific examples

-22-

of the misrepresentations that led to these settlement agreements. *See* FAC ¶¶ 81–92, 203-06. For the reasons discussed above, that is amply sufficient. *See supra* § V.

### D.    HCSC has pled a claim for money had and received.

Zotec's reply relies on *MGA Insurance Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808 (Tex. Ct. App. 2012), but even a cursory reading of that decision shows it says the opposite of what Zotec suggests. As *MGA* explains, "[t]he question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong" and "[a]ll plaintiff need show is that defendant holds money which in equity and good conscience belongs to him." *Id.* at 813 (quoting *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951)). The claim is "less restricted and fettered by technical rules and formalities than any other form of action," and "looks solely to the inquiry, whether the defendant holds money which . . . belongs to the plaintiff." *Id.*

Against that backdrop, Zotec's argument that HCSC must plead it "holds identifiable funds that belong to HCSC" or that Zotec "received money from HCSC at all" improperly grafts tracing and privity requirements onto a doctrine that rejects such technical limitations. D.E. 50 at 24. The FAC alleges Zotec caused HCSC to pay inflated awards or settlements on ineligible claims and that Zotec received a portion of those payments from providers. FAC ¶¶ 211–12. That is more than sufficient at the pleading stage. Texas courts do not require a plaintiff to trace specific dollars through a payment chain or allege direct payment to the defendant. *See Greer v. White Oak State Bank*, 673 S.W.2d 326, 329 (Tex. Ct. App. 1984) (unjust enrichment still available even where the defendant "no longer has the specific funds" received from the plaintiff). And there is nothing "speculative" about the proposition that a portion of the money Zotec fraudulently caused HCSC to pay to its clients was passed on to Zotec.

Nor does Zotec's "adequate remedy at law" argument provide a basis for dismissal. It is black letter law that a party may plead a claim for equitable relief "in the alternative to claims for

which an adequate remedy at law is possible, but not guaranteed." *Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, No. 3:12-cv-4641, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014). Zotec makes no effort to explain why this principle does not squarely apply.

### E.  HCSC validly requests both declaratory and injunctive relief.

Zotec's reply repeats its arguments attacking HCSC's requested remedies under a separate heading. HCSC incorporates its response set forth above in Section I(B).

## VIII.  Personal jurisdiction and venue lie against Zotec in this District.

### A.  The Court has personal jurisdiction over Zotec.

Zotec suggests that personal jurisdiction does not lie because this case involves "Texas-centered claims" but not "Texas-directed conduct" by Zotec. D.E. 50 at 25. But Zotec did not merely send papers into a forum that happened to house HCSC. To the contrary, Zotec solicited and secured engagements with Texas providers, and then initiated IDR disputes on Texas claims, involving services rendered in Texas, to Texas patients, by those Texas providers, and directed those submissions at Texas-based health plans. FAC ¶¶ 18–21, 69–132. Those are not incidental forum contacts; they are the conduct giving rise to the claims.

*Walden v. Fiore*, 571 U.S. 277 (2014) offers no support to Zotec's position. There, a Georgia law enforcement officer seized cash from Nevada residents at an airport in Atlanta; the only connection to Nevada was that the plaintiffs resided there. *Id.* at 279–80, 289. The Supreme Court held that this was insufficient because the defendant did not purposely direct any case-related conduct to the forum state, and the only connection to the state was the plaintiff's residence. *Id.* at 284–86. Here, Zotec's conduct was directed at Texas from the outset—it arises from transactions Zotec chose to pursue in Texas that ultimately injured HCSC.

-24-

**B.    Venue is proper in this district.**

Zotec asserts that venue is improper because HCSC relies on "Texas-centered background facts" rather than the location of Zotec's conduct. D.E. 50 at 25. But section 1391(b)(2) asks whether "a substantial part of the events or omissions giving rise to the claim occurred" in the district—not where a defendant happened to be located when it acted. Here, the FAC alleges that Zotec initiated hundreds of IDR proceedings on behalf of providers in this District, arising from medical services rendered in this District to HCSC members located here, and administered through HCSC's Texas operations. FAC ¶¶ 20-21. Zotec's reliance on *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex. 2000), underscores the point. In *Bigham*, the court held venue proper even though the in-district contacts were "meager" and the "overwhelming majority" of the defendant's conduct occurred elsewhere. *Id*. at 1049. The connections here are far more substantial: the underlying services, the providers, the claims, and the resulting payment obligations are all centered in this District.

## CONCLUSION

Zotec fails to establish its novel contention that it is absolutely immune from suit for its fraud. The Court should deny Zotec's motion to dismiss in its entirety.

-25-

Dated: May 8, 2026

By:  _/s/ Jamie R. Kurtz_

**PATTON, TIDWELL & CULBERTSON**

Kelly B. Tidwell
kbt@texarkanalaw.com
Geoffrey P. Culbertson
gpc@texarkanalaw.com
2800 Texas Boulevard
PO Box 5398
Texarkana, TX 75505
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

– and –

**ROBINS KAPLAN LLP**

Jamie R. Kurtz*
JKurtz@RobinsKaplan.com
Nathaniel J. Moore*
NMoore@RobinsKaplan.com
John K. Harting*
JHarting@RobinsKaplan.com
Kyle D. Nelson*
KNelson@RobinsKaplan.com
Jackie Fielding*
JFielding@RobinsKaplan.com
Lindsay Dreyer*
LDreyer@RobinsKaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile:  (612) 339-4181

*Admitted *pro hac vice*

*Attorneys for Plaintiff Health Care Services Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2026, a true and correct copy of the above was served via email through the Eastern District of Texas's CM/ECF system.

/s/ *Jamie R. Kurtz*
Jamie R. Kurtz