# Defendants' Motion to Dismiss

## Case No. 5:25-cv-00186-RWS



So too here. The alleged harm in this case did not result when Defendants submitted items and services for payment under the NSA or when the IDR entities determined that those items or services were eligible for IDR. Rather, the alleged harm resulted from the impact that such submissions and decisions had on the IDR entities' ultimate payment determinations.[5] Plaintiff makes this clear in its sur-reply to Defendants' motion in which it states that Defendants' alleged

HaloMD Dkt. 64 at 10

78.   HCSC is then forced to pay administrative fees in connection with these improperly granted awards. There are also significant overhead costs and expenses incurred by HCSC because of the volume of ineligible items and services.

170.   Had Zotec not made these misrepresentations, the IDR Process would not have proceeded; Zotec would not have been able to initiate formal IDR proceedings on ineligible items and services; HCSC would not have been trapped in IDR Processes for ineligible items and services (despite its eligibility objections to Zotec, the Federal Government Agencies, and IDREs); Zotec would not have been able to obtain awards for providers on ineligible claims; and HCSC would not have been forced to incur unnecessary administrative fees, overhead costs, and other expenses to respond to Zotec's ineligible IDR Process submissions.

179.   As a direct and proximate result of these misrepresentations, Zotec caused HCSC to suffer damages in an amount to be proven at trial, including without limitation: IDR awards fraudulently procured against HCSC by Zotec for ineligible claims; administrative and IDRE fees and costs imposed on HCSC as part of the IDR Processes for ineligible claims; and costs for the overhead and resources necessary for HCSC to respond to IDR Processes initiated by Zotec for ineligible claims.

3

FAC (Zotec) ¶¶ 78, 170, 179

512 F.3d 742

United States Court of Appeals, Fifth Circuit.

GULF PETRO TRADING COMPANY,

INC.; Petrec International, Inc.; James S.

Faulk; James W. Faulk, Plaintiffs–Appellants,

v.

NIGERIAN NATIONAL PETROLEUM

CORPORATION; Bola Ajibola; Jackson

at 1211–12). Nor do we believe that the result here will preclude lawsuits that touch only tangentially on an arbitration, since a plaintiff need only be able to allege wrongdoing that has caused harm independent of its effect on the arbitration award to avoid the collateral attack label. [5]

[5]    To take Gulf Petro's example of a hypothetical RICO lawsuit relating to "irregularities arising from conduct relating to arbitration," it seems likely that if the link between the conduct complained of and the arbitration was indeed so attenuated that the wrongdoing could truly be characterized as only "arising from conduct relating to arbitration," then at least some of the resulting claims would be based on harm independent of the arbitration award and therefore could not be construed as a collateral attack. Such a suit, however, is not before this court.

*Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 751 & n.5 (5th Cir. 2008)

7 F.3d 1085
United States Court of Appeals,
Second Circuit.

Tuaha MIAN, Plaintiff–Appellant,

v.

DONALDSON, LUFKIN & JENRETTE
SECURITIES CORPORATION, a Delaware
Corporation; Smith Barney, Harris Upham
& Co., Incorporated, Defendants–Appellees.

The fact that a major component of the damages sought would consist of the amount of the arbitration award—if the plaintiff can prove that but for the discrimination, the arbitrators would have ruled in his favor—does not mean that Mian's suit is one to challenge the award within the meaning of § 10 of the Federal Arbitration Act. Although we do not consider the issue to be free of all doubt, and until the Supreme Court

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993)

78.    HCSC is then forced to pay administrative fees in connection with these improperly granted awards. There are also significant overhead costs and expenses incurred by HCSC because of the volume of ineligible items and services.

170.    Had Zotec not made these misrepresentations, the IDR Process would not have proceeded; Zotec would not have been able to initiate formal IDR proceedings on ineligible items and services; HCSC would not have been trapped in IDR Processes for ineligible items and services (despite its eligibility objections to Zotec, the Federal Government Agencies, and IDREs); Zotec would not have been able to obtain awards for providers on ineligible claims; and HCSC would not have been forced to incur unnecessary administrative fees, overhead costs, and other expenses to respond to Zotec's ineligible IDR Process submissions.

179.    As a direct and proximate result of these misrepresentations, Zotec caused HCSC to suffer damages in an amount to be proven at trial, including without limitation: IDR awards fraudulently procured against HCSC by Zotec for ineligible claims; administrative and IDRE fees and costs imposed on HCSC as part of the IDR Processes for ineligible claims; and costs for the overhead and resources necessary for HCSC to respond to IDR Processes initiated by Zotec for ineligible claims.

6

FAC (Zotec) ¶¶ 78, 170, 179

So too here. The alleged harm in this case did not result when Defendants submitted items and services for payment under the NSA or when the IDR entities determined that those items or services were eligible for IDR. Rather, the alleged harm resulted from the impact that such submissions and decisions had on the IDR entities' ultimate payment determinations.[5] Plaintiff makes this clear in its sur-reply to Defendants' motion in which it states that Defendants' alleged

78.     HCSC is then forced to pay administrative fees in connection with these improperly granted awards. There are also significant overhead costs and expenses incurred by HCSC because of the volume of ineligible items and services.

170.     Had Zotec not made these misrepresentations, the IDR Process would not have proceeded: Zotec would not have been able to initiate formal IDR proceedings on ineligible items and services; HCSC would not have been trapped in IDR Processes for ineligible items and services (despite its eligibility objections to Zotec, the Federal Government Agencies, and IDREs); Zotec would not have been able to obtain awards for providers on ineligible claims; and HCSC would not have been forced to incur unnecessary administrative fees, overhead costs, and other expenses to respond to Zotec's ineligible IDR Process submissions.

179.     As a direct and proximate result of these misrepresentations, Zotec caused HCSC to suffer damages in an amount to be proven at trial, including without limitation: IDR awards fraudulently procured against HCSC by Zotec for ineligible claims; administrative and IDRE fees and costs imposed on HCSC as part of the IDR Processes for ineligible claims; and costs for the overhead and resources necessary for HCSC to respond to IDR Processes initiated by Zotec for ineligible claims.

# Fraudulent Inducement

**Fraudulent Inducement**

203.    HCSC reasonably and justifiably relied upon Zotec's misrepresentations. HCSC is unable to contest eligibility on all of the IDR disputes initiated by Zotec because, in part, of the batching tactics discussed herein. Thus, HCSC has to reasonably and justifiably rely upon Zotec's submission of information and attestations that the underlying items and services were eligible for the IDR Process.

206.    This further induced HCSC to unnecessarily come to settlement agreements with Zotec on certain ineligible claims submitted into the IDR Process.

9

FAC ¶¶ 203; 206