# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAREEF JANDALI PLASTIC SURGERY LLC | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:25-CV-1168 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, | : | JULY 21, 2026 |
| Defendant. | : | |

**RULING ON MOTION TO DISMISS BY DEFENDANT CIGNA HEALTH AND CROSS MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF SHAREEF JANDALI (Docs. Nos. 24, 29)**

**I.      INTRODUCTION**

The plaintiff, Shareef Jandali Plastic Surgery LLC ("Shareef Jandali"), filed suit against defendant, Cigna Health and Life Insurance Company ("Cigna"), alleging nonpayment of medical bills.  See Amended Complaint at 4-5 ("Amd. Complaint") (Doc. No. 4).  Specifically, Shareef Jandali alleges a violation of the Federal Arbitration Act, 9 U.S.C. section 9, and a violation of the No Surprises Act ("the NSA") 42 U.S.C. §§ 300gg-111.  Id.

Before the court is Cigna's Motion to Dismiss.  See Motion by Defendant Cigna Health and Life Insurance Company to Dismiss Plaintiff Shareef Jandali Plastic Surgery, LLC's Amended Complaint ("Mot. to Dismiss") (Doc. No. 24).  Shareef Jandali filed an Opposition to that Motion and also filed a Cross-Motion for Summary Judgment.  See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint and in Support of Plaintiff's Cross-Motions to Confirm and/or for Summary Judgment ("Pltf's Opp'n and Cross-Motion for SJ") (Doc. No. 29).  Cigna filed a Reply.  See Defendant Cigna Health and Life Insurance Company's Reply Memorandum in

Further Support of its Motion to Dismiss Plaintiff Shareef Jandali Plastic Surgery, LLC's Amended Complaint and in Opposition to Plaintiff's Cross-Motion to Confirm and for Summary Judgment ("Def's Reply")(Doc. No. 32). Shareef Jandali replied in support of its Cross-Motion. See Plaintiff's Reply Memorandum in Further Support of Plaintiff's Cross-Motions to Confirm and/or for Summary Judgment ("Pltf's Reply") (Doc. No 33). Cigna filed a Notice of Supplemental Authority. See Notice of Supplemental Authority ("Cigna Suppl. Authority") (Doc. No. 34). Shareef Jandali filed a Notice of Supplemental Authority. See Notice of Supplemental Authority ("Shareef Jandali Suppl. Authority") (Doc. No. 35).

Based on the following, Shareef Jandali has a cause of action to enforce the IDR award. Further, under 12(b)(6), it has pled such a cause of action. Therefore, Cigna's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is denied. The court denies Cigna's Motion to Dismiss (Doc. No. 24), and the court grants Shareef Jandali's Cross Motion for Summary Judgment (Doc. No. 29).

## II.   BACKGROUND

### A.   Statute Background

Congress enacted the NSA as part of the Consolidated Appropriations Act of 2021, effective January 1, 2022. See Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758–2890 (2020). Congress recognized that surprise medical bills—particularly those arising from out-of-network emergency care—"can result in financial ruin" for patients. H.R. Rep. No. 116-615, pt. 1, at 52 (2020). To remedy this, the NSA prohibits out-of-network providers from billing patients beyond their in-network cost-sharing obligations and directs disputes over the payment owed to providers to be resolved

2

between the insurer and provider, not the patient.  Additionally, the NSA prohibits the provider from suing the patient.

After receiving services, an out-of-network provider submits a claim directly to the insurer, which must issue a payment or denial within thirty days.  See 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(I).  If the provider disagrees with the insurer's determination, it may initiate a thirty-day open negotiation period.  See 42 U.S.C. § 300gg-111(c)(1)(A). If negotiations fail, either party may initiate the IDR process within four business days. See 42 U.S.C. § 300gg-111(c)(1)(B).  A certified IDR entity ("CIDRE") then adjudicates the dispute through "baseball-style" arbitration, selecting one of the two offers submitted by the parties after considering statutorily enumerated factors.  See 42 U.S.C. § 300gg-111(c)(5)(A)–(C).

The statute declares that the CIDRE's determination "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts."  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I).  Payment "shall be made directly to the nonparticipating provider . . . not later than 30 days after the date on which such determination is made."  See 42 U.S.C. § 300gg-111(c)(6). The statute further provides that the determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9."  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).[1]

---

[1] Section 10 (a)(1-4) of Title 9 of the U.S. Code states: (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration -

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

B.     Case Background

Plaintiff, Shareef Jandali Plastic Surgery, LLC, ("Shareef Jandali") is a reconstructive surgery medical practice specializing in plastic surgery.  See Cigna Rule 56(a)(2) Statements ("56(a)(2) Stats.") (Doc. No. 32-1) at ¶ 1.  In December 2022, Dr. Shareef Jandali, M.D., owner and principal of Shareef Jandali, provided treatment for a patient at the Yale New Haven Health Hospital.  Id. at ¶ 3.  At the time of the treatment, the patient was the beneficiary of a health care plan issued by the defendant Cigna.  Id. at ¶ 4.  After treating the patient, Shareef Jandali submitted a health care medical bill seeking payment for the procedure, which Cigna did not pay.  Id. at ¶¶ 5, 6.  Shareef Jandali was an out of network provider; however, the services were rendered emergently or inadvertently.  Id. at ¶ 7.  Thus, the patient qualified for medical treatment to be subject to reimbursement pursuant to the NSA.  Id. at ¶ 7.[2]

Under the NSA, Shareef Jandali disputed Cigna's nonpayment determination and initiated the negotiation period.  Id. at ¶ 8.  Shareef Jandali then initiated an IDR process as the payment dispute was not resolved during the negotiation period.  Id. at ¶¶ 9, 10,

---

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

None of these four grounds was alleged in this case.

[2] While Cigna disputed parts of paragraph 7 of the 56(a)(1) statement, the court discerns no denial of the portion of paragraph 7 where services were rendered emergently/inadvertently.  The court views that portion as undisputed.

In cases where a party denied some of a 56(a) Statement, the court reads the part not denied as admitted.  See, e.g., Cigna 56(a)(2) Stats. at ¶ 9.  If the court determines the defendant has come forward with evidence to support the defendant's denial in part, the court has stated the Statement to reflect the defendant's partial denial.

If the denial or partial denial does not have evidence to support it, the court deems the Statement admitted in that regard.  See Connecticut Local Rule 56(a)(3).

11.[3]  On July 23, 2024, the CIDRE ruled in Shareef Jandali's favor under Dispute-1403902 and awarded it a total of $31,500.  Id. at ¶ 16.

Under the NSA, if it is determined in IDR that an amount is due, the insurer has 30 days from the date of the award to tender the ordered payment.[4]  Id. at ¶ 12.  Cigna failed to deliver the payment to Shareef Jandali by the deadline, August 22, 2024, and Cigna has continued to fail to pay.  Id. at ¶ 13.  As of the issuance of this Ruling, nearly 700 days have passed since Cigna's obligation to pay was determined and ordered.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  See Makarova, 201 F.3d at 113.

---

[3] See n. 2.

[4] Cigna disputes this Statement on grounds that it is a legal conclusion and is not supported by evidence.  However, Shareef Jandali provides support for this Statement, and Cigna provides no support for their dispute.  See n. 2.  Even if properly characterized as a legal conclusion, the court agrees with it.

B.      Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

C.      Motion for Summary Judgment Standard

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue of fact

exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.     DISCUSSION

### A.     Subject Matter Jurisdiction

Cigna argues that this court does not have subject matter jurisdiction. See Mot. to Dismiss at 9-10. It argues that there is no cause of action under the NSA and, because Shareef Jandali cannot state a claim upon which relief can be granted, the case must be dismissed. Id.

"Typically, an action arises under federal law if the law 'creates the cause of action asserted.'" See Badgerow v. Walters, 596 U.S. 1, 7–8 (2022) (quoting Gunn v. Minton, 568 U.S. 251, 257 (2013)). That does not mean that a federal cause of action is required for a court to have federal question jurisdiction. See Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 317 (2005). Indeed, "[i]t is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ." See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).

A federal court has jurisdiction "if the right of the petitioners to recover under their complaint will be sustained" under one construction of a federal law but not another, "unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Id. (cleaned up).  Under section 1331, what matters is that the claim arises under federal law on the face of a well-pleaded complaint, see generally Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152-54 (1908), not whether the NSA expressly entitles relief to the plaintiff.  See Agag v. Cigna Health & Life Ins. Co., No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *6 (D. Conn. Apr. 15, 2026).

Several other courts, including those in this District, have determined that subject matter jurisdiction exists and have issued opinions in cases similar to the instant one. See Agag, 2026 WL 1021213, at *6 (D. Conn. Apr. 15, 2026) (holding the court possesses subject matter jurisdiction because the claim arises under federal law on the face of a well pleaded complaint); PHI Health, LLC v. Optimum Choice, Inc., 2026 WL 850453, No. 25-CV-2320-ABA (D. Md. Mar. 27, 2026); Guardian Flight LLC v. Aetna Life Ins. Co., 789 F. Supp. 3d 214 (D. Conn. 2025) (holding that the NSA created a private right of action for providers to enforce independent dispute resolution awards); see also Brief for the United States as Amicus Curiae in Support of Plaintiffs-Appellants at 6, Guardian Flight, L.L.C. v. Health Care Serv. Corp., 140 F.4th 271 (5th Cir. 2025), 2024 WL 4451970 ("Gov't Amicus Br.") (arguing that the NSA supports judicial enforcement of payment determinations).  This court, agreeing with these courts, concludes there is subject matter jurisdiction, for "concluding otherwise would ignore the low bar that exists for federal question jurisdiction."  See Agag, 2026 WL 1021213, at *6

8

(D. Conn. Apr. 15, 2026).  Therefore, the court denies the defendant's Motion to Dismiss based on lack of subject matter jurisdiction.

     B.     The NSA Authorizes Judicial Enforcement of IDR Awards

The court now turns to the key issue in this case: whether the NSA allows this court to enforce the award determination made by the IDR.  Courts across the country have differed on this issue.  This court joins other courts, and the federal government's own interpretation, which have concluded that the NSA permits a provider to seek judicial enforcement of a binding IDR determination award.  See Agag, 2026 WL 1021213 (D. Conn. Apr. 15, 2026); PHI Health, LLC v. Optimum Choice, Inc., 2026 WL 850453, No. 25-CV-2320-ABA (D. Md. Mar. 27, 2026); Guardian Flight LLC v. Aetna Life Ins. Co., 789 F. Supp. 3d 214 (D. Conn. 2025); see also Brief for the United States as Amicus Curiae in Support of Plaintiffs-Appellants, Guardian Flight, L.L.C. v. Health Care Serv. Corp., 140 F.4th 271 (5th Cir. 2025).

Cigna argues that there is no private right of action and, because creating a cause of action is a legislative endeavor, this court cannot read one into the statute. See Mot. to Dismiss at 10.  Cigna relies on a Fifth Circuit decision, which held that the NSA contains no private right of action to enforce an IDR determination.  Id. at 11. Further, Cigna argues that there is no implied right of action, and the text of the NSA confirms Congress's decision to omit a private right of action.  Id. at 16-18.

Shareef Jandali argues that the plain text, especially in light of the structure and background of the NSA, creates a right for a provider to be paid and establishes that the NSA confirms a right of action to enforce the insurer's obligation to pay.  See Pltf's Opp'n at 6.  This court agrees and holds that the NSA provides for judicial enforcement of IDR award determinations.

9

### 1.    The NSA's Text and Structure Create an Enforceable Right

This court begins with an examination of the text of the NSA.  It is true that the NSA does not include the specific words "private right of action," but these are not required "magic words explicitly inviting suit."[5]  See Maine Cmty. Health Options v. United States, 590 U.S. 296, 323 (2020).  The Supreme Court has stated that "magic words explicitly inviting suit" are not required, and statutory "shall pay language" reflects Congress's intent to "create both a right and a remedy."  Id. at 323-325.

First, to determine if Congress intended a private right of action under the NSA, this court looks to whether the statute contains provisions that "unambiguously confer individual federal rights."  See Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 180 (2023) (emphasis in original).  The statute must be rights creating in the sense that its text is phrased in the terms of the persons who will benefit.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 274 (2002).  Further, the Supreme Court has also found that mandatory "shall" language confers the right to a private action.  See Alexander v. Sandoval, 532 U.S. 275, 288 (2001).

The text of the NSA is both direct and specific.  "A determination of a certified IDR entity . . . shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts."  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) (emphasis added).  "The total plan or coverage payment required pursuant to subsection (a)(1) or (b)(1) . . . shall be made directly to the nonparticipating

---

[5] While it is true that courts are reluctant to infer a private rights of action, this is particularly true when statutes are enacted pursuant to Congress's spending power, in light of Article I, section 8, clause one of the Constitution.  See  Medina v. Planned Parenthood S. Atl., 606 U.S. 357, 365 (2025).  However, the NSA was not enacted pursuant to Congress's spending power, and thus the heightened scrutiny for finding that a spending power statute has created an enforceable right does not apply here.  Id. at 369.

provider or facility not later than 30 days after the date on which such determination is made."  See 42 U.S.C. § 300gg-111(c)(6) (emphasis added).

Here, the statute tells the insurer that it shall pay; it further specifies the amount to be paid (the IDR determination award), the recipient (the provider or facility), and sets a deadline (30 days).  This language is clear: it reflects congressional intent to create both a right and a remedy.  Put another way, this right and remedy is "a money mandating obligation." Maine Cmty. Health Options v. United States, 590 U.S. 296, 301 (2020).  The statute essentially "say[s] that A shall be liable to B" and, so for that reason, the statute must be understood to have created an "express" right of action. See Key Tronic Corp. v. United States, 511 U.S. 809, 818 (1994).  This specificity in the statute is even more clear when viewing the statute as a whole.  It conveys Congressional intent and expectation that, if a certified IDR entity issues an IDR award that a payor refuses to pay, the prevailing party may enforce its right — specifically, its statutory right to prompt payment of an IDR award — through an action filed in federal court.  See Cheminova A/S v. Griffin L.L.C., 182 F. Supp. 2d 68, 73 (D.D.C. 2002) (reasoning that the term "binding" — there in the context of a statute governing pesticides that provided that agency determinations would be "binding" — was "understood to mean that an award will be enforceable in court").

In this case, there was a dispute between Shareef Jandali and Cigna.  Under the NSA, Shareef Jandali began the IDR procedure and, upon prevailing, is entitled to be paid within 30 days consistent with the binding IDR determination.  Where Congress has unambiguously created rights which the statutory text, structure, and context reveal Congress also intended to be enforceable in court, this court cannot ignore that

11

congressional language and intent.  See Talevski, 599 U.S. at 186.  Congress, determined to protect patients from not only the "surprise" of unexpectedly high bills, but also from being involved in drawn-out payment disputes, created the IDR process.  See PHI Health, LLC v. Optimum Choice, Inc., 2026 WL 850453, at *22 (D. Md. Mar. 27, 2026).  Once that process culminates in a "binding" IDR award, Congress made clear there should be no further obstacle to the provider being paid, and paid promptly.  Id.[6]

The statute's structure reinforces this conclusion.  The NSA stripped out-of-network providers of their pre-existing common-law right to collect payment from a patient.  See 42 U.S.C. §§ 300gg-131, 132.  Having extinguished those state law remedies, Congress "replaced those rights with a federal right with both procedural and substantive components."  See PHI Health, LLC v. Optimum Choice, Inc., 2026 WL 850453, at *17–18.  The procedural right is the entitlement to pursue the IDR process and obtain a determination from the IDR.  The substantive right is the express mandate that the determination be paid.  Congress could not have intended to leave providers with no judicial avenue to enforce the right it simultaneously created and acknowledged as "binding," because to do so would be pointless.  Id. at *30.

### 2.    The No Judicial Review Clause Does Not Bar Confirmation

Cigna and some courts rely heavily on a specific clause in the NSA, section 300gg-111(c)(5)(E)(i)(II), to deny judicial enforcement.  See, e.g., Guardian Flight, 140 F.4th at 275; Mot. to Dismiss at 18.  This clause provides that IDR determinations "shall not be subject to judicial review, except in a case described in any of the paragraphs (1) through (4) of Section 10(a) of title 9."  See Section 300gg-111(c)(5)(E)(i)(II).  The

---

[6] If this was not the case, why would Congress create a procedure which leads to a "binding" determination?

12

argument is that Congress, by choosing these specific words, completely removed all judicial powers under the NSA.  See, e.g., Guardian v. HCSC, 140 F.4th at 275; Mot. to Dismiss at 18.  However, this argument completely disregards both the text and the meaning of these words.

First, the ordinary meaning of judicial review refers to the attempts of the non-prevailing party to seek "review" of, i.e., to challenge, a decision.  See PHI Health, LLC v. Optimum Choice, Inc. No. 25-CV-2320-ABA, 2026 WL 850453, at *24-25 (D. Md. Mar. 27, 2026).  Challenging a decision is the meaning of the phrase "judicial review" under the APA.  See id. at 24-25  (D. Md. Mar. 27, 2026).  The ordinary administrative law meaning of "judicial review" is authority to review, set aside, or modify agency or adjudicative action.  See 5 U.S.C. § 706(2) (defining judicial review under the APA as the power to "hold unlawful and set aside" agency action).  In Agag, the court undertook a thorough analysis of the ordinary meaning of "judicial review," which refers to a court's examination of and potential interference with a prior decision.  See Agag, 2026 WL 1021213, at *27-28 (cataloguing three definitions of "judicial review" from Black's Law Dictionary, none of which encompass confirmation).  Judicial review is an examination of the merits of a case and the power to modify or reject it.

A petition to confirm an IDR award, as presented in this case, does not ask this court to review, revise, or even scrutinize the merits of the IDR determination.  It simply asks the court to do what the statute says – to give legal effect to a "binding" award.  See 42 U.S.C. Section 300gg-111(c)(5)(E)(i)(I).  This distinction is not merely semantics.  The "judicial review" provision in the NSA limits the court's ability to vacate a decision based only on grounds identified in "paragraphs (1) through (4) of section

13

10(a) of title 9" (§ 300gg-111(c)(5)(E)(i)(II)), such as "fraud," "corruption," "partiality," or a "refus[al] to hear evidence pertinent and material to the controversy." See 9 U.S.C. § 10(a)(1)–(4).  Congress made clear, in its text, that the non-prevailing party is not entitled to seek a "do-over" in federal court.  The parties have already engaged in a process ending in "baseball arbitration."  One party prevailed and is now seeking legal enforcement of the determination.

Cigna argues that some courts have focused on the fact that Congress did not separately incorporate section 9 of the Federal Arbitration Act (FAA).  See Mot. to Dismiss at 20.  Once again, this argument is not persuasive when the text of the statute is examined.  The NSA already renders the award determination of the IDR "binding upon all parties involved" and payment "shall be made . . . no later than 30 days."  See 42 U.S.C. § 300gg-111(c)(6).  Unlike a typical arbitration action under the FAA, where a private party has prevailed in a private arbitration and then must seek to enforce the award, under the NSA, the Act itself already provides binding language and a required payment deadline.  See PHI Health, LLC v. Optimum Choice, Inc., No. 25-CV-2320-ABA, 2026 WL 850453, at *26-27.

This court is not persuaded by Cigna's arguments.  If its reading is accepted, a court would be able to only vacate IDR awards at the request of non-prevailing parties, but prevailing parties would not have any means to enforce an award.  Under this reading, an insurer could refuse to pay under the NSA, force the provider to engage in the costly (in both time and money) arbitration process, lose in that process, then this same insurer could refuse to pay again, even after a so-called binding award.  This not-so-hypothetical insurer would know it may only face a nominal administrative penalty,

14

paid to the government, not the provider, and no court could order a single dollar paid to providers.  This reading would ignore Congress's significant efforts in setting up a dispute resolution process extinguishing providers' private rights and decreeing in law that the awards issued by the IDR are binding and shall be paid.[7]   It would incentivize insurers to deny all claims. Insurers would know that they would not need to defend the matter in the IDR process because the result would be unenforceable by the provider. Instead, the insurers would pay the nominal fees, if any are imposed, to the government, all while providers remain unpaid for treatment of patients who experienced emergency situations and received services.

That is absurd.  A fundamental canon of statutory interpretation is that a statute should be construed to avoid absurd results.  See United States v. Messina, 806 F.3d 55, 70 (2d Cir. 2015) (rejecting defendant's interpretation of the statute at issue, as it would yield perverse results); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (enforcing the plain language of a statute except in absurd results); Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").  This court will avoid absurd results and follow the plain meaning interpretation that is consistent with the statutory language and legislative purpose.[8]  See, supra, Part IV.

---

[7] The HHS complaint process appears already extremely inadequate and cumbersome.  See Pltf's Reply at 14-16 (detailing a lack of responses to the complaints; multiple providers stating they have over $5 million in outstanding payments; GAO describes the obstacle-ridden process for providers).  This only provides further support that insurance companies have little incentive to comply.

[8] The Government advocated for a similar conclusion in Guardian Flight.  "To give meaningful effect to Congress's limitation on the circumstances in which an IDR award can be disturbed, it is necessary to recognize that Congress intended parties to be able to seek judicial enforcement. If judicial enforcement were unavailable, a party dissatisfied with the result of an IDR proceeding could choose to

3.      Statutory Interpretation

"When the statutory text is plain and unambiguous, [the court's] function is to enforce it according to its terms." See United States v. Bedi, 15 F.4th 222, 226 (2d Cir. 2021). "If the statutory language is ambiguous, however, we resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history, to see if these interpretive clues clearly reveal Congress's intent." See Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007) (alteration adopted) (internal quotation marks and citation omitted).

It is this court's view that the text is clear. However, if it were found not to be, this court would reach the same conclusion applying canons of statutory interpretation. One of the most basic interpretive canons, the canon against surplusage, provides that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." See Corley v. United States, 556 U.S. 303, 314 (2009) (citing Hibbs v. Winn, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181–186 (rev. 6th ed.2000)). The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme. See Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013). The court concludes there are two provisions in the NSA that, under Cigna's reading, would be entirely meaningless.

First, the NSA declares the award determination of the IDR "shall be binding upon all parties involved." See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Cigna in essence argues that this provision has no legal consequence; instead, an insurer can refuse to

---

avoid the need to demonstrate to a court that any of the narrow grounds specified in 9 U.S.C. § 10(a)(1)-(4) applies by simply ignoring the CIDRE's award." See Brief for the United States at 12–13.

16

pay the <u>binding</u> determination and suffer only a possible nominal administrative penalty.

Under this reading, the binding determination of the award would mean nothing.  The

term "binding . . . [is] understood to mean that an award will be enforceable in court."

<u>See</u> <u>generally</u> <u>Cheminova A/S v. Griffin L.L.C.</u>, 182 F. Supp. 2d 68, 72 (D.D.C. 2002) (in

context of an arbitration award).  To accept Cigna's interpretation would strip the word

"binding" of all force and reduce it to surplusage, which is in conflict with the canon.

<u>See</u> <u>Corley</u>, 556 U.S. at 314.

Second, the NSA declares payment "shall be made directly to the

nonparticipating provider or facility not later than 30 days after the date on which such a

determination is made."  <u>See</u> 42 U.S.C. § 300gg-111(c)(6).  This provision could not be

more specific.  It details a specific payee, the specific amount, and a specific deadline.

If this court accepts Cigna's argument, that no court can compel payment, this entire

provision is surplusage.  That would be in direct conflict with the canon, which states

that Congress would not write an entire specific provision in the law that is simply

surplusage.  <u>See</u> <u>Corley</u>, 556 U.S. at 314.  If the court accepts Cigna's reading, it would

be forced to construe these provisions as simply surplusage, which is precisely the

outcome the canon requires this court to avoid.

    4.    <u>NSA's Administrative Remedies are not a Comprehensive</u>
           <u>Enforcement Scheme</u>

Echoing an argument where courts have declined to find a private right of action,

Cigna contends that, because Congress empowered HHS to enforce IDR awards

through civil penalties, no private remedy is available.  <u>See</u> Mot. to Dismiss at 23-24;

<u>Guardian Flight</u>, 140 F.4th at 277.  It argues that, because there exists an administrative

penalty, a private remedy is precluded.  <u>Id</u>.

17

This court is not persuaded.  First, the enforcement mechanism created by Congress does not vindicate the providers' rights, rights created in place of contractual rights under state law, i.e., it does not enforce providers' rights.  The penalty administered by the HHS is not payable to the provider, but to the government.  See 42 U.S.C. § 300gg-22(b)(2)(C).  Nothing in the statute gives HHS the power to force the insurer to pay the IDR award determination to the provider.  See PHI Health, LLC v. Optimum Choice, Inc., 2026 WL 850453, at *33-34. (D. Md. Mar. 27, 2026).

Other courts have identified the perverse incentives which would exist if this argument were accepted.  A health insurance company could choose to pay the civil penalty, but not the IDR award, as the civil penalty under the NSA is a mere $100 per day, significantly below what IDR awards are.  Id. at 33-34.  In this case, the amount of money owed is relatively small in the scheme of medical billing, approximately $31,500.  It would take over 310 days, nearly a full year, for the penalties to reach the amount owed.  This can only incentivize an insurance company to choose to delay instead of ever paying the provider.  See id. at *34 ("a health insurance company has significant incentive to choose paying the [fine amount] many times over . . . instead of ever paying the provider.").  When the provider billing is greater, as it is in many cases, the incentives are even more perverse.  See December 2023 United States Government Accountability Office Report ("GAO Report"), Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging, https://www.gao.gov/assets/870/864587.pdf at 32.  Multiple providers reported having over $5 million in outstanding IDR award payments that remain unpaid.  Id.

18

The empirical evidence supports this court's conclusions. Providers, who submitted IDR arbitration reports, describe that "the majority of the payment determinations [they have] won through the IDR process remain unpaid past the 30-day statutory deadline." Id. at 32. Furthermore, in January 2025, CMS issued a report titled, "Final Report – Federal Market Conduct Examination of Ambetter of Indiana" ("Report"). See https://www.cms.gov/files/document/ambetter-indiana.pdf. The Report assessed the IDR process and the payment awards and conducted empirical studies. Those studies found that, of the IDR awards issued between January 1, 2022, and December 31, 2023, 18 of the 28 awards were not paid within the required 30 days under the NSA. Id. at 6.

In this court's view, even if the enforcement of provisions under the NSA provided meaningful administrative penalties, which this court is doubtful it does, the provisions do not preclude a private right of action. See Sandoval, 532 U.S. at 290 ("the provision of other (private or public) enforcement mechanisms . . . merely "suggests" "that Congress intended to preclude" implied private rights of action."); Oxford Univ. Bank v. Lansuppe Feeder, LLC, 933 F.3d 99, 106 (2d Cir. 2019) ("This suggestion [against implied right of action] can be overcome where, as here, the meaning of the text is clear.").

The plain meaning of the NSA's language and structure evidences that the inadequate nominal government enforcement mechanism does not "preclude . . . a finding of congressional intent to create a private right of action." See Sandoval, 532 U.S. at 290. "Payment shall be made" is clear: the provider has a right to payment. The enforcement of the IDR award is consistent with the general purpose and language of

19

the legislation which clearly states that awards are both <u>final</u> and <u>binding</u>. Without enforcement, which pays the provider for his or her services, the entire statute and IDR process is useless. <u>See</u>, <u>supra</u>, Part IV.B.1-3.

      C.      <u>Cigna's Coverage Denial Defense is Not Persuasive</u>

Cigna raises a threshold coverage defense, arguing that the NSA does not reach the underlying claim. <u>See</u> Def's Reply at 18–21. In Cigna's view, the NSA governs only disputes over how much an insurer must pay for a service that is covered under a plan; the NSA does not apply when, as Cigna contends is the case here, the insurer has denied the claim altogether on coverage grounds. <u>See id</u>. at 19. Because its denial "relate[d] to coverage, not reimbursement," Cigna argues the IDR process was inapplicable from the outset and urges this court to deny Shareef Jandali's cross-motion. <u>See id</u>. at 19–21.

However, Cigna already had an opportunity to raise this "coverage denial" defense. During the IDR process "the provider or facility and the health plan or issuer must submit payment offers and <u>additional</u> <u>information</u> supporting their payment offers to the certified IDR entity." <u>See</u> Ctrs. for Medicare & Medicaid Servs., <u>Payment Disputes Between Providers and Health Plans</u>, CMS.GOV, https://www.cms.gov/nosurprises/help-resolve-payment-disputes/payment-disputes-between-providers-and-health-plans (last visited June 30, 2026) (emphasis added). Cigna had the opportunity already in front of the CIDRE to submit additional supporting information where it could have argued its "coverage denial" defense. [9] <u>See</u> 56(a)(2)

---

[9] The record does not reflect that Cigna defended in the IDR on the grounds of no coverage. However, its offer of $0.00 in the baseball arbitration clearly suggests that was its position. <u>See</u> Amd. Compl. Ex. A, (IDR Determination) (Doc. No. 4-1).

Stats. at ¶¶ 6, 9.  Apparently, the CIDRE rejected Cigna's coverage position.  Shareef Jandali prevailed.  Id. at ¶ 16.  Therefore, the "coverage defense" argument did not prevail before the CIDRE.

Cigna is now asking this court to engage in judicial review of the CIDRE's decision to accept Shareef Jandali's offer, even though it spends much time arguing that this court cannot confirm an IDR award because to do so would require judicial review, something Cigna says this court cannot do.  See generally Def's Reply; Mot. to Dismiss.  Cigna argues that this court cannot engage in judicial review when doing so would be to its detriment (i.e., confirming the IDR award), but in the same breath argues that this court should engage in judicial review when doing so would be advantageous to it (i.e., not confirming the IDR award).

Cigna already had an opportunity to present its "coverage denial defense" by submitting "additional information" and making its "$0" offer.  The NSA prohibits judicial review of the IDR with limited exceptions, limited strictly to motions to vacate an award as outlined in paragraphs 1-4 of section 10 of the FAA, which paragraphs are generally related to fraud, corruption, or misconduct.  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C.A. § 10 (West).

There is nothing in the record before this court that indicates any party moved to vacate the award.  If Cigna believed the IDR process was wrongful due to fraud, corruption, or bias, it could and should have filed a motion to vacate the award.  However, Cigna did not do so.  Further, there is nothing in the record to support such a motion to vacate.

It bears noting that, if this court accepts Cigna's position, it would create a massive loophole.  Any insurer could claim its failure to pay an IDR award was based on "coverage denial," not move to vacate the award on the limited applicable grounds, but instead, defend in federal court against the confirmation of an award by recharacterizing the underlying dispute as "coverage issues."[10]  The provider, in Cigna's view, has no remedy.  This court rejects Cigna's argument regarding Coverage Denial.

> D.    Whether FAA Section 9 Applies Independently

Shareef Jandali has argued that, under section 9 of the FAA, a party to an arbitration may commence a summary action in federal court for confirmation of the award, and "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed [by the FAA]."  See 9 U.S.C. § 9.  Here Cigna has not moved to vacate the award.  The basis for a court to disrupt an IDR award is extremely limited.  See Guardian Flight LLC v. Aetna Life Ins. Co., 789 F. Supp. 3d 214, 227 (D. Conn.

---

[10] This appears to be Cigna's strategy.  In New England PA, LLC v. Cigna Health and Life Insurance Company, 25-cv-01472-JCH (D. Conn., 2026), the same insurance company, Cigna, refused to engage in the entire IDR process.  Cigna submitted no documents nor even a dispute of the billing code but, in its Motion to this court, attempted to have a "do-over."  See Motion to Dismiss (Doc. No. 19) in New England PA, LLC v. Cigna Health and Life Insurance Company, 25-cv-01472-JCH (D. Conn., 2026).  It argued that the billing submitted by the provider is disputed by Cigna, so now the court should engage in judicial review.  Id. at 10-18.  Cigna had ample time to engage in the IDR process and on the record states it disagreed with the billing codes, but did not avail itself of any of the administrative avenues for relief.  Instead, it submitted nothing, and after the provider had to spend significant time and money to go through the IDR and court process, only now that it has to pay money, does Cigna want to return to the beginning to dispute the claim.

Cigna repeats the argument here in Shareef Jandali, including the lack of the court's power of judicial review, in Northeast Surgery Center, LLC v. Cigna Health and Life Insurance Company, 25-cv-1476-JCH (D. Conn. 2026).  In that case, Cigna submitted a $0 dollar award to the IDR.  When the IDR awarded Northeast Surgery Center $20,800 Cigna claimed in court filings that it was making a coverage denial determination, and it had not received the proper information from Northeast.  Id.  However, Cigna did not avail itself of the IDR process to challenge the applicability of the IDR process, where its "lack of documentation" argument would have been reviewed.  Instead, Cigna asks this court to review the IDR determination, despite ignoring the irony of arguing in three cases before this same court that this court cannot engage in judicial review.  Cigna did not appropriately challenge the IDR authority; it cannot now seek, when it loses, to engage in judicial review when it benefits Cigna.

22

2025).  "Barring the limited exceptions in § 10(a) of the FAA, IDR awards are final. Courts cannot vacate or entertain collateral attacks on these awards."  Id.  As discussed above, coverage determinations are not fraud or misstatements of fact.  See, supra, Part IV.C.

The NSA contains clear language to authorize judicial enforcement of IDR awards if a party refuses to pay.  Congress may have also envisioned that another procedural mechanism exists under the FAA.  IDR awards are somewhat similar to arbitration awards.  However, the court need not decide whether the FAA separately allows Shareef Jandali to enforce the IDR award because the NSA independently allows for such enforcement.  Therefore, the court will not address Shareef Jandali's FAA argument at this time.

E.     Rule 12(b)(6)

Cigna has also moved to dismiss for failure of Shareef Jandali to state a Claim. Shareef Jandali has pled a claim under the statutory cause of action discussed above. Shareef Jandali has alleged it provided emergent medical services to a patient insured by Cigna.  See Amd. Compl. at ¶¶ 6, 11.  However, Shareef Jandali is an out of network provider with no network contract with Cigna.  Id. at ¶ 10.  Shareef Jandali filed a claim with Cigna, but Cigna did not pay.  Id. at ¶¶ 8, 9.  Shareef Jandali initiated the IDR process, and it ultimately prevailed, being awarded a binding award of $31,500.  Id. at ¶¶ 13-16.  Cigna failed to pay.  Id. at ¶ 19.

Shareef Jandali  pled all elements of a cause of action under the NSA. Therefore, Cigna's Motion to Dismiss under Rule 12(b)(6) is denied.

23

      F.      Shareef Jandali's Cross Motion to Confirm IDR Award and Fees

      1.      Cross Motion to Confirm IDR

In light of the above analysis, the court now turns to the Motion to Confirm the IDR award in Dispute Resolution – 1403902. See Doc. No. 29. The following facts are undisputed:

1) Plaintiff Shareef Jandali Plastic Surgery, LLC provided medical services to Patient M.P. on December 15, 2022. See 56(a)(2) Stats. (Doc. No. 32-1) at ¶¶ 1–4.

2) Shareef Jandali is an out-of-network provider with no network contract with Cigna. Id. at ¶ 2.

3) Cigna made no payment on the underlying claim. Id. at ¶ 6.

4) Shareef Jandali initiated the IDR process. The CIDRE issued an award on July 23, 2024, finding Shareef Jandali to be the prevailing party and awarding $31,500.00. Id. at ¶ 11(a).

5) Cigna has not paid the award. Id. at ¶ 13.

6) More than 685 days have elapsed since Cigna's statutory payment deadline. Id. at ¶ 14 (edited to update to the current date).

In light of this court's analysis of the NSA, a court must confirm the award unless a party moves to vacate the award under paragraphs (1) through (4) of 9 U.S.C. Section 10(a). See Agag v. Cigna Health & Life Ins. Co., No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *15 (D. Conn. Apr. 15, 2026). There has been no motion to vacate the award.[11]

---

[11] Cigna's coverage denial defense was available to it during the IDR proceeding. See 56(a)(2) Stats. at ¶¶ 6, 9.

Under the NSA, upon receiving a claim, an insurer must issue an initial payment or denial. See 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(I). Here, Cigna denied the claim in full, asserting that no amount was owed. See 56(a)(2) Stats. at ¶¶ 5, 6, 9. Shareef Jandali, having exhausted the mandatory open

24

Judicial review must be based on one of the four exceptions in the NSA: corruption, fraud, partiality, or exceeding the arbitrators' powers. <u>See</u> 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Cigna does not contend that the award was procured by fraud or misrepresentation, or any of the four exceptions for judicial review. <u>See generally</u> 56(a)(2) Stats. Cigna does not dispute that it failed to pay the award. <u>See id</u>. at ¶ 13. Therefore, there is no genuine dispute of material fact, and the award is confirmed as a matter of law. The Motion for Summary Judgment is granted.

### 2. <u>Post-Judgment Interest and Fees</u>

The Clerk shall enter judgment confirming the IDR award of $31,500, in favor of Shareef Jandali. Post-judgment interest shall accrue from the date of entry of judgment pursuant to section 1961 of title 28 of the U.S. Code.

At this time, the court declines to award pre-judgment interest or attorneys' fees, as these issues were not adequately briefed by the parties.

## V. CONCLUSION

The NSA's carefully constructed IDR framework, representing a significant legislative effort by Congress to help both patients and providers in emergency health situations, is rendered meaningless if prevailing providers are left without judicial

---

negotiation period without resolution, then initiated the IDR process. <u>See</u> 42 U.S.C. § 300gg-111(c)(1)(A)–(B). Cigna participated in that process, submitted its offer of $0, with coverage denial its basis. <u>See</u> 56(a)(2) Stats. at ¶¶ 6, 9. The CIDRE considered the parties' submissions and determined that Shareef Jandali prevailed. <u>See</u> 42 U.S.C. § 300gg-111(c)(5)(A)–(C). In its decision, the CIDRE necessarily and implicitly rejected any coverage denial argument by Cigna.

Cigna has not moved to vacate that determination. Under the NSA, judicial review is available only on the narrow grounds set forth in paragraphs (1) through (4) of section 10(a) of title 9. <u>See</u> 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4). These grounds were not alleged in this case. Having failed to prevail on its "coverage defense" at the IDR, and not presenting any of the allowed four grounds, Cigna cannot now use this judicial proceeding to relitigate a defense the IDR already considered and rejected. To permit otherwise would allow a losing party to circumvent the finality that the NSA's binding determination provision and the judicial review provision are expressly designed to prevent.

enforcement of the awards they are owed. Such a result is not only inconsistent with the plain meaning of the text, the structure of the legislation, and the principles that guide statutory interpretation, but it also produces precisely the kind of absurd, perverse outcome that courts are obligated to reject. See, supra, Part IV.B.1-4.

For the reasons stated above, the court denies Cigna's Motion to Dismiss (Doc. No. 24) under both Rule 12(b)(1) and Rule 12(b)(6). There is a federal cause of action, and Shareef Jandali plausibly pled it.

The court grants Shareef Jandali's Cross Motion for Confirmation/Summary Judgment (Doc. No. 29). The Clerk is ordered to enter judgment confirming the IDR award of $31,500 in favor of Shareef Jandali.

Shareef Jandali may file a motion for an award of the IDR fees and pre-judgment interest within 21 days on this Ruling.

The Clerk is directed to close the case.


**SO ORDERED.**

Dated at New Haven, Connecticut this 21st day of July 2026.


   /s/ Janet C. Hall
Janet C. Hall
United States District Judge