**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, | § | CIVIL ACTION NO. 5:25-CV-00186-RWS |
| Plaintiff, | § | |
| v. | § | |
| ZOTEC PARTNERS, LLC, | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Zotec Partners, LLC's Corrected Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for a More Definite Statement, and to Partially Strike Plaintiff's First Amended Complaint. Docket No. 28. Defendant's motion is fully briefed. Docket Nos. 28, 44, 50, 55. On May 27, 2026, the Court heard oral argument on the motion. Docket No. 57. For the reasons set forth below, Defendant's motion to dismiss (Docket No. 28) is **GRANTED**.

**BACKGROUND**

Plaintiff filed the instant lawsuit on December 18, 2025 alleging that Defendants initiated thousands of disputes that were ineligible for Independent Dispute Resolution ("IDR"). Docket No. 3 (Complaint) ¶ 4. Plaintiff complains Defendant "stockpiles claims and bulk-submits large quantities of 'batched' claims" to "overwhelm the IDR process with ineligible items and services . . . and profit from the resulting improper awards." Docket No. 21 (First Amended Complaint) at ¶¶ 7, 72. Plaintiff contends Defendant has employed this scheme more than 500 times by initiating

more than 100 batched items and services "to overwhelm [Plaintiff's] ability to meaningfully contest eligibility."[1] *Id.* at ¶¶ 9, 152. Having to respond to these batched submissions allegedly causes Plaintiff to incur "administrative fees that were not properly owed, and additional administrative and staffing expenses." *See id.* at ¶ 12. Consequently, Plaintiff claims Defendant's scheme "has damaged [it] to the tune of millions of dollars." *Id.* at ¶ 69.

On March 17, 2026, Defendant filed the instant motion to dismiss "for lack of subject matter jurisdiction, failure to join indispensable parties, failure to state a claim upon which relief may be granted, lack of personal jurisdiction, and improper venue." Docket No. 28 at 1. Alternatively, Defendant asks that the Court order Plaintiff to replead and partially strike the First Amended Complaint. *Id.*

## LEGAL STANDARD

### I. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of a federal court to hear a claim. A motion to dismiss under Rule 12(b)(1) is properly granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[1] " 'Batching' refers to the submission of multiple items and services into a single IDR process." Docket No. 21 ¶ 10. The No Surprises Act ("NSA") permits batching of items and services so long as they meet the criteria specified by the Secretary of Health and Human Services. 42 U.S.C. § 300gg-111(c)(3)(A). Batched items and services are only considered if: they are furnished by the same provider or facility, payment is to be made by the same group health plan or health insurance issuer, they are related to treatment of a similar condition, and they occurred during a 30-day period following the date on which the earliest included item or service was furnished. *Id.*

A motion to dismiss under Rule 12(b)(1) should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support" of his or her claims. *Sureshot Golf Ventures, Inc. v. Topgolf Int., Inc.*, 754 Fed. Appx. 235, 239 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)). In deciding a Rule 12(b)(1) motion, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

## II. Collateral Attack

A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal." *Collateral Attack*, Black's Law Dictionary (12th ed. 2024). The Fifth Circuit rejects collateral attacks that seek to undo adjudicatory outcomes rendered in judicial and quasi-judicial (*e.g.*, arbitration) proceedings. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 487–90 (5th Cir. 2020); *Gulf Petro Trading Co. v. Nigerian Nat'l Petrol. Corp.*, 512 F.3d 742, 747–750 (5th Cir. 2008). The Fifth Circuit has explained that a plaintiff's claims may constitute a collateral attack even though they are "not attempt[ing] to relitigate the facts and defenses of the underlying disputes that had prompted arbitration, but instead . . . alleging that wrongdoing had tainted the arbitration proceedings and caused unfair awards." *Gulf Petro*, 512 F.3d at 749–50. Therefore, the Court must not simply determine "whether the claims 'attempt to relitigate the facts and defenses that were raised in the prior arbitration,' " but "look to 'the relationship between the alleged wrongdoing, purported harm, and arbitration award.' " *Texas Brine Co.*, 955 F.3d at 488 (quoting *Gulf Petro*, 512 F.3d at 749).

## DISCUSSION

### I. Defendant's Motion to Dismiss (Docket No. 28)

Plaintiff complains that Defendant submitted ineligible claims for IDR under the No Suprises Act ("NSA") and that this scheme caused it to incur substantial IDR administrative fees.

#### A. The NSA's Statutory Bar to Judicial Review of IDR Awards and Collateral Attack

##### 1. The Federal IDR Process

In 2020, Congress enacted the NSA to shield patients from unexpected or surprise medical bills. Docket No. 21 (First Amended Complaint) at ¶¶ 29–30. The NSA established an IDR process to resolve payment disputes between out-of-network providers and health plans. *Id.* at ¶ 31. The NSA requires the Departments of Health and Human Services, Labor, and Treasury (the "Departments") to promulgate regulations establishing procedures for IDR. 42 U.S.C. § 300gg-111(c)(2).

The IDR process is available for services and items that fall within the NSA's scope (*e.g.*, services rendered by an out-of-network provider). Docket No. 21 (First Amended Complaint) at ¶ 32(b). Before a party initiates the IDR process, it must engage in a 30-day open negotiation period within 30 days of the first notice of payment or denial for an item or service. *Id.* at ¶ 32(d). The provider then has four days after exhaustion of the open negotiation period to initiate the formal IDR process. *Id.* The party requesting IDR must answer various questions related to the medical services and claims—such as information about the service and eligibility of the claim—and the provider must attest that the service meets the eligibility requirements. *Id.* at ¶¶ 33(c), 35. After the claim is submitted an IDR entity ("IDRE") is either selected or appointed. *Id.* at ¶ 33(d). The responding party then has an opportunity to object to the submission and dispute eligibility. *Id.* at ¶ 33(e); *see* Docket No. 28 at 6 ("The system anticipates disputes about eligibility and gives payors

a place to object during open negotiations and in IDR."); 45 C.F.R. § 149.510(c)(1)(iii) ("[I]f the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party must also provide information regarding the Federal IDR process's inapplicability.").

If an IDRE determines that a claim's items or services are eligible and a formal IDR process is initiated, each party must then submit an offer "proposing the amount the provider should be paid for the out-of-network item or service." Docket No. 21 (First Amended Complaint) at ¶¶ 33g–h; *see* 42 U.S.C. § 300gg-111(c)(5)(B)(i)–(I) (stating each party must submit a proposed payment amount for the item or service supplied by the provider or facility). The IDRE then has 30 days to determine the payment amount and notify the parties of its decision.[2] Docket No. 22 ¶ 33(i). Plaintiff explains that "[t]his decision is then binding upon the parties, subject to limited judicial review, and the non-prevailing party is responsible for administrative and IDRE fees." *Id.* at ¶ 33j; *see* 42 U.S.C. § 300gg-111(c)(5)(F). The NSA states that IDR decisions "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

**2. Analysis**

Plaintiff argues that the NSA's judicial review provision only bars review of payment determinations—not eligibility decisions. Docket No. 44 at 10; *see* 42. U.S.C. § 300gg-111(c)(5)(E) ("A determination of a certified IDR entity . . . (II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9."). According to Plaintiff, "[t]here is no indication—let alone a 'clear and convincing' one—that Congress intended to foreclose judicial review of [Defendant's] eligibility scheme in the IDR

[2] The IDR entity determines the payment amount by reviewing qualifying payment amounts for similar items or services, taking into account the applicable year and the geographical region. 42 U.S.C. § 300gg-111(c)(5)(C).

Process." *Id.* at 10. Plaintiff also argues that "[h]ad Congress intended to limit judicial review on all decisions made by an IDRE, including eligibility decisions . . . it could easily have said so." *Id.* at 11. Plaintiff explains that "[a]lthough the IDR process differs in important respects from arbitration, both systems draw a distinction between threshold eligibility questions and merit determinations" and "courts routinely decide whether a dispute is arbitrable." *Id.* Plaintiff argues the same is true with respect to IDR eligibility. *Id.* Thus, Plaintiff contends that the damages it seeks are independent of IDR awards. *Id.* at 9. According to Plaintiff, the damages are related to administrative and staffing expenses it incurred in responding to "tens of thousands" of IDR submissions, *id.*, that "it cannot recover via any other means." *Id.* at 7. Finally, Plaintiff argues its claims are not barred by the collateral attack doctrine. *Id.* at 8–9.

The parties' arguments in the present matter are substantially similar to those raised in *Blue Cross Blue Shield of Texas, A Div. of Health Care Serv. Corp., A Mut. Legal Reserve Co., v. HaloMD, LLC, et al.*, No. 5:25-cv-132-RWS, 2026 WL 1557492, at *3–7 (E.D. Tex. May 22, 2026). In *HaloMD*, the Court held that the NSA's statutory bar on judicial review precluded consideration of claims seeking to challenge determinations made through the IDR process and that the collateral attack doctrine bars claims that would require re-adjudication of disputes resolved through that process. 2026 WL 1557492, at *3–6.

As in *HaloMD*, Defendant here contends that IDR determinations are binding and not judicially reviewable except for narrow Federal Arbitration Act ("FAA") vacatur.[3] Docket No. 28 at 9. Specifically, Defendant argues that the NSA bar on judicial review prevents the Court from

[3] The defendants in *HaloMD* argued that "[a]ll of [defendant]'s claims should be dismissed because they seek to relitigate 'binding' IDR decisions for which both the NSA and SB 1264 foreclose judicial review except in very narrow situations that [plaintiff] has not pleaded, and cannot plead, here." 5:25-cv-132; Docket No. 15 at 15.

considering Plaintiff's claims altogether. *Id.* at 9–11. Defendant also argues that Plaintiff's claims are barred by the collateral attack doctrine because permitting them to proceed would require the parties to "relitigate scores of eligibility and payment outcomes." *Id.* at 11.

Plaintiff advances counterarguments that are substantially similar to those advanced by the plaintiff in *HaloMD*. Plaintiff asserts (1) that the NSA bar on judicial review only applies to "payment determinations," not eligibility decisions, and (2) that its claims do not constitute a collateral attack because it seeks damages that were not recoverable in the IDR process nor any that were the result of an IDR award. *Compare* Docket No. 44 at 7–12 *with* No. 5:25-cv-132; Docket No. 21 at 9–15.

The Court agrees that the NSA forecloses judicial review of eligibility determinations. Plaintiff's argument that the judicial bar only applies to "payment determinations" is not persuasive. Plaintiff contends the sole determination made by an IDRE is "the amount of payment" and that the NSA bar under 42 U.S.C. § 300gg-111(c)(5)(E)(i) does not apply, thereby "leaving eligibility determinations subject to judicial oversight." Docket No. 44 at 10–11; Docket No. 55 at 4–5. Under 42 U.S.C. § 300gg-111(c)(5)(E)(i) "[a] determination of a certified IDR entity under subparagraph (A) . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9 [(FAA § 10 (a)]." 2026 WL 1557492, at *3. Because none of these circumstances is met, "the NSA prevents this Court from reviewing . . . the awards at issue in Plaintiff's suit." *Id.*; *see Guardian Flight, L.L.C v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025) ("The NSA expressly bars judicial review of IDR awards except as to the specific provisions borrowed from the FAA . . . . The district court correctly reasoned that this bar on judicial review strongly suggests Congress did not insert a private right of action into the statute.").

Following the reasoning set forth in *HaloMD*, the same outcome is warranted here. The Court explained in *HaloMD* that "inherent in the NSA's bar of judicial review of payment determinations is a limitation on the review of eligibility decisions." 2026 WL 1557492, at *4. Thus, if the Court determines that the items and services submitted for payment by Defendant were ineligible under the NSA, then the ultimate payment awards would be called into question. *Id.*; *see Anthem Blue Cross Life and Health Ins. Co. et al. v. HaloMD, LLC, et al.*, No. 8:25-cv-01467-KES (C.D. Cal. Apr. 9, 2026), ECF No. 135 at 14 (concluding that "Plaintiffs' other fraud-based claims, like RICO, could not be litigated without deciding whether Defendants made false eligibility attestations, a decision that would necessarily re-examine eligibility determinations made by IDREs."). The same reasoning applies here.[4]

Second, Plaintiff's claims are an impermissible collateral attack on the IDR awards. Plaintiff argues that, because the damages it incurred are not recoverable in the IDR process, they do not constitute a collateral attack on the IDR awards. Docket No. 44 at 9–11; Docket No. 55 at 9. Plaintiff explains that these damages include administrative costs and fees, staffing expenses, and the amounts it paid in settlement agreements with Defendant. Plaintiff further contends "it is not challenging the merits of the IDRE's payment determinations" and did "not bring a claim for vacatur of the IDR awards." *Id.* at 4–5. Yet Plaintiff explained at the hearing on this motion that

[4] Plaintiff cites three cases, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020), *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015), and *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993), in support of its argument "that Congress [did not] intend[] to foreclose judicial review of [Defendant]'s eligibility scheme in the IDR process." Docket No. 44 at 10. The Court previously held these cases were inapposite because they addressed disputes that involved federal agency decisions. *HaloMD*, 2026 WL 1557492, at * 4. Yet, as Plaintiff itself acknowledges, the disputes here occurred in a private context and are "carried out before a privately selected arbitrator." Docket No. 44 at 25. Thus, the cases on which Plaintiff relies are inapplicable because Plaintiff is not challenging administrative actions.

"**[w]e readily admit that we're seeking damages that include IDR awards that were fraudulently procured.**" Docket No. 60 at 40:4–6 (emphasis added). Plaintiff also explained it is "seeking administrative and IDR fees and costs that were imposed on [us] as part of that process, but separately, that we are seeking damages for the cost and overhead resources necessary for us to respond to these IDR processes initiated by [Defendant]. *Id.* at 40:6–10. Plaintiff's own statements demonstrate that it "seeks payment that is largely co-extensive with the losses it allegedly sustained in the form of IDR awards decided against it."[5] *HaloMD*, 2026 WL 1557492, at *5.

The issue is whether Plaintiff's claims still constitute a collateral attack on the IDR awards even where Plaintiff seeks administrative fees, costs, and expenses in "building out an entire team to respond to th[e] ineligible scheme." The Court found the Fifth Circuit's opinion in *Gulf Petro Trading Company, Inc. v. Nigerian National Petroleum Corporation*, 512 F.3d 742 (5th Cir. 2008), instructive. The plaintiff there alleged that a Swiss arbitration award was procured through fraud, bribery, and corruption, and sought to vacate it. *Id.* at 745. The plaintiff contended its "RICO and state law claims [were] not disguised attempts to vacate or attack" the award because "the claims it advances and relief it seeks are analytically distinct from vacatur." *Id.* at 747, 750. The Fifth Circuit, affirming dismissal for lack of subject matter jurisdiction, concluded that:

> The relief Gulf Petro seeks—**the award it believes it should have received, as well as costs, expenses, and consequential damages stemming from the unfavorable award it did receive**—shows that its true objective in this suit is to

[5] Each of Plaintiff's claims refers to the impact of Defendant's alleged actions on the ultimate IDR awards. *See e.g.*, Docket No. 21 (First Amended Complaint) at ¶¶ 166, 185 (explaining regarding Plaintiff's fraud, and negligent misrepresentation claims that "[b]ut for [Zotec's] misrepresentations, Zotec would not have been able to initiate" "IDR disputes for ineligible claims"); *id.* at ¶¶ 207–08 (explaining regarding Plaintiff's fraudulent inducement claim that "[b]ut for Zotec's misrepresentations, HCSC would not have been fraudulently induced to take these acts. . . . Moreover, HCSC would not have settled or otherwise engaged in negotiations on ineligible claims but for Zotec's misrepresentations that such claims were eligible for the IDR Process.").

> rectify the harm it suffered in receiving the unfavorable Final Award. Though cloaked in a variety of federal and state law claims, Gulf Petro's complaint amounts to no more than a collateral attack on the Final Award itself.

*Id.* at 750, 753 (emphasis added). And, as this Court explained in *HaloMD*, the collateral attack doctrine bars claims that, if successful, would undermine or require revisiting the merits of disputes already resolved through the IDR process. *See* 2026 WL 1557492, at * 6 (explaining "the collateral attack doctrine is even more clearly applicable where, as here, Plaintiff *is* attempting to relitigate issues previously decided by the IDR entities (*i.e.*, the eligibility of certain items and claims under the NSA")).

The alleged harm in this case, just like in *HaloMD*, stems from the effect that the IDR submissions and decisions had on the final payment determinations made by the IDR entities.[6]

Plaintiff also argues that its fraudulent inducement claim is not a collateral attack on the IDR awards. *See* Docket No. 44 at 9. At the hearing on the motion, Plaintiff argued its fraudulent inducement claim should not be dismissed because it is based on the settlement agreements it entered into because of Defendant's misrepresentations.[7] Docket No. 60 at 48:25–49–2. "[B]y definition, this is not an instance where there was a determination made by an IDRE. There's no issued or written decision that comes out. This is a settlement agreement, and it's not after an IDR award was issued." *Id.* at 29:2–6. "[G]iven that fraudulent inducement focuses on settlement

---

[6] The Court notes, as it did in *HaloMD*, that Plaintiff's interpretation of the NSA statute would lead to untenable results. Assuming, *arguendo*, that Plaintiff were to prevail, tens of thousands of IDR awards would remain intact. As a result, the primary damages Plaintiff seeks would offset the money it still owes to out-of-network providers related to unpaid IDR awards. *Cf. Aetna Health Inc, et al. v. Radiology Partners, Inc., et al.*, No. 3:24-cv-1343 (M.S. Fla. Apr. 16, 2026) ("Allowing Aetna to recover for the IDR awards above what it otherwise would have paid would have the same effect as discarding the administrative process established by Congress."), ECF No. 105 at 9. This further demonstrates why Plaintiff's claims *are* a collateral attack on the IDR awards.

[7] Plaintiff explained at the hearing that it "believe[d] that fraudulent inducement was not squarely and properly addressed by [the *HaloMD*] ruling." Docket No. 60 at 37:24–38:1.

agreements that would . . . mean as a matter of course that the IDRE would never have issued a final payment determination. And so there is no collateral attack." Docket No. 60 at 37:24–38:6.

Plaintiff is correct that an IDRE does not issue a final award on the claims when parties settle. However, the argument that the fraudulent inducement claim is not a collateral attack is unconvincing. The issue remains whether certain items or services were eligible for IDR. Plaintiff contends it is asking the Court only to revisit the claims which resulted in settlement agreements to determine whether they were ineligible. *See* Docket No. 44 at 33–34. Yet Plaintiff alleges it " 'would not have settled' ineligible claims but for [Defendant's] false representations that those claims qualified for the IDR process." Docket No. 44 at 34; Docket No. 21 (First Amended Complaint) at ¶ 208.

In order to evaluate Plaintiff's argument, the Court would necessarily be required to revisit the eligibility determinations in all of the claims submitted to IDR—not merely those that were settled before an IDR entity issued an award. Plaintiff's own but-for theory requires adjudication of the eligibility of every challenged IDR submission that formed the basis of its claim, including claims it did not settle, because Plaintiff alleges that Defendant would not have initiated any ineligible IDRs absent the alleged misrepresentations. *See* Docket No. 22 at ¶¶ 204–208. Determining which IDRs were ineligible is therefore necessary to assess the alleged falsity and scope of the purported scheme. Such an inquiry would improperly entangle the Court in determinations that Congress expressly assigned to the IDR process. Congress gave the IDR entities—not the courts—the authority to determine a service or item's eligibility and then to make a payment determination binding on the parties to that IDR award. Therefore, Plaintiff's fraudulent inducement claims necessarily fail under the collateral attack doctrine.

Plaintiff also argues that, because the NSA is silent on which remedies are available, it may seek relief for Defendant's overall scheme because Plaintiff's claims "go beyond any individual award or claims against those who were not parties to an IDR award." Docket No. 55 at 3. Plaintiff does not cite any authority suggesting a complaint attacking hundreds of IDR awards and Defendant's overall scheme would be protected from the collateral attack doctrine. Instead, Plaintiff contends the cases Defendant relies on are not relevant because they concern disputes between insurers and providers—not third parties.[8] *Id.*

These differences, however, do not change the fact that the cases address the same type of collateral litigation Plaintiff seeks here—review of eligibility across thousands of IDR disputes. *See Anthem Blue Cross Life & Health Ins. Co. v. HaloMD LLC*, No. 8:25-CV-01467-KES, 2026 WL 982629, at *9–10 (C.D. Cal. Apr. 9, 2026) (holding "judicial review of the IDREs' eligibility determinations premised on the same allegedly false eligibility attestations [made by a third-party] is not available."); *Aetna Health Inc.*, 2026 WL 1556164, at *4 (M.D. Fla. Apr. 16, 2026) (dismissing plaintiff's claims because [it]'s attempt to end-around the NSA and FAA strictures is preempted); *Agag v. Cigna Health & Life Ins. Co.*, No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *10-12 (D. Conn. Apr. 15, 2026) (distinguishing between confirmation or enforcement of an IDR award—viewed by the Court as a purely ministerial act—and merits re-examination, which constitutes impermissible judicial review).

In *Anthem*, Judge Scott did not find the plaintiff's arguments persuasive and concluded its claims were a guise for seeking review of IDR entity determinations, "regardless of the legal

[8] The Fifth Circuit rejected a similar argument regarding a "scheme." *Gulf Petro*, 512 F.3d at 747. The plaintiff contended "it ha[d] alleged a pattern of racketeering and conspiratorial conduct that, while arising in the context of arbitration proceedings, constitute[d] an independent violation of federal and state law and compel[ed] relief analytically distinct from vacatur." *Id.*

label." *Anthem Blue Cross Life & Health Ins. Co. v. HaloMD LLC*, No. 8:25-CV-01467-KES, 2026 WL 982629, at *10 (C.D. Cal. Apr. 9, 2026). Here, Plaintiff presents essentially the same arguments made by the plaintiff in *Anthem* concerning statutory interpretation, policy, and the NSA's limit on judicial review. *See id.* at *9–10.

Plaintiff's principal complaint is that the IDR process is unfair and inefficient. Docket No. 21 at ¶¶ 3, 49, 50–51, 55–56.[9] However, courts have declined to determine whether the NSA has been violated simply because a plaintiff complains there is no adequate remedy or that the IDR process is flawed. *Id.* at *9; *see Advanced Vascular Assocs. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 2:25-CV-05068-JDW, 2026 WL 935833, at *2–3 (E.D. Pa. Apr. 7, 2026) (rejecting plaintiff's argument "that the administrative remedies under the NSA are 'inadequate' " because "that's not for [the court] to decide. Congress decided how to structure the remedies under the NSA," and "[plaintiff's] remedy is with Congress, not [the court], to fix the statute if it thinks there is a problem.").

Plaintiff also contends "the collateral attack doctrine only applies to litigation or arbitration—and the IDR Process is fundamentally different than arbitration." Docket No. 44 at 6.

[9] *See e.g.*, Docket No. 21 (First Amended Complaint) at ¶ 3 (explaining that "[t]he IDR Process has not worked as intended."); *id.* at ¶ 49 (explaining that "it was estimated that there would be approximately 17,435 disputes submitted to the IDR Process each year," but that "[t]hose predictions turned out to be a drastic underestimation."); *id.* at ¶ 50 (explaining that "[p]roviders submitted . . . more than 70 times the aforementioned annual case load Congress anticipated."); *id.* at ¶ 51 (explaining that "providers are winning a disproportionate amount of these disputes" and are receiving "unreasonably high rates"); *id.* at ¶ 55 (explaining that "[r]esearchers have commented that 'absent corrective action from policy makers, patients will ultimately bear the cost, through higher premiums and the administrative overhead of an increasingly exploited arbitration process.' " (quoting Lawson Mansell & Sage Mehta, Niskanen Center, New data shows No Surprises Act arbitration is growing healthcare waste, (June 18, 2025), Available at: https://www.niskanencenter.org/new-data-shows-no-surprises-act-arbitration-is-growing-healthcare-waste/)); *id.* at ¶ 56 (explaining that "[a] handful of companies are attempting to weaponize the NSA IDR Process to extract excessive rates.").

Plaintiff offers no controlling authority and instead points to a series of characteristics it believes distinguish the IDR process from arbitration, including that "arbitration is voluntary, pursuant to mutual agreement, and permits parties to define the scope of the proceedings." *Id.* at 8. These differences do not "change[] the fact that Congress expressly prohibited judicial review of IDR awards and did not provide a private right of action to enforce or challenge such awards." *HaloMD*, 2026 WL 1557492, at 7; *Guardian Flight, LLC v. Med. Evaluators of Tex. ASO, LLC*, 140 F.4th 613, 623 (5th Cir. 2025) (explaining Certified Independent Dispute Resolution Entities "are neutral arbiters of payment disputes with no stake in the underlying controversy" and they "function more or less exactly like arbitrators"). The Court reaffirms its position that the collateral attack doctrine applies to IDR awards with the same authority as it applies to arbitration awards.

Plaintiff finally argues that its claims seeking injunctive relief "cannot possibly 'collaterally attack' IDRs that have not yet been commenced." Docket No. 44 at 9. This is the same argument plaintiff in *HaloMD* presented. *HaloMD*, WL 2026 1557492, at *7 (arguing its prospective relief claim "cannot possibly 'collaterally attack' IDRs that have not yet been commenced."). Therefore, Plaintiff's request for "an injunction prohibiting Defendants from continuing to submit false attestations and initiate IDR Processes for items or services that are not eligible for IDR" is a remedy rather than an independent cause of action. Docket No. 44 at 9–10; Docket No. 21 (First Amended Complaint) at ¶ 216; *see Doe v. Univ. of N. Tex.*, No. 4:18-CV-17, 2018 WL 6495084, at *9 n.10 (E.D. Tex. Nov. 20, 2018), *report and recommendation adopted sub nom. Jon Unt-Rs Doe v. Univ. of N. Tex.*, No. 4:18-CV-17, 2018 WL 6446469 (E.D. Tex. Dec. 10, 2018) (collecting cases and explaining that "Federal courts recognize an injunction is a remedy, not a separate claim or cause of action; a pleading can request injunctive relief in connection with a substantive claim, but a separately plead claim or cause of action for injunctive relief is

inappropriate."); *Aetna*, 2026 WL 1556164, at *2, 4 (explaining "the Court is not empowered to" limit or enjoin "disputed claims not yet filed with the IDR"). This is also confirmed by the complaint, which "seeks an injunction prohibiting Defendant[] from continuing to submit false attestations and initiate IDR Processes for items or services that are not eligible for IDR, or from seeking to enforce non-binding awards entered on items and services not eligible for IDR." Docket No. 21 (First Amended Complaint) ¶ at 216. Therefore, Plaintiff's request for an injunction does not constitute an independent cause of action and is inextricably intertwined with its other claims.

Based on the foregoing, Plaintiff's Claims I–V with respect to Defendant's submission of items and services for IDR are **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

### B. Defendant's Remaining Arguments

Because the Court concludes that it lacks subject-matter jurisdiction pursuant to the NSA and the collateral attack doctrine, it does not reach the merits of Defendant's remaining arguments regarding Article III standing, collateral estoppel, the *Noerr-Pennington* Doctrine, Texas privilege for advocacy in quasi-judicial proceedings, and Rules 8, 9(b), 12(b)(6), and 19(b).

## CONCLUSION

For the foregoing reasons, Defendant Zotec's Corrected Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 28) is **GRANTED**, and Defendant's Motion to Dismiss (Docket No. 25) is **DENIED-AS-MOOT**.

The Clerk of Court is directed to close the case.

**So ORDERED and SIGNED this 23rd day of September, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE